265 F.2d 607
 MECHANICAL CONTRACTORS ASSOCIATION OF PHILADELPHIA, INC.,
v.
LOCAL UNION 420, Appellant,
Local Union 428, and Local Union 690 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO.
 No. 12748.
 United States Court of Appeals Third Circuit.
 Argued February 3, 1959.
 Decided April 13, 1959.
 
 M. H. Goldstein, Bernard L. Barkan, Goldstein & Barkan, Philadelphia, Pa., for defendant-appellant.
 Henry W. Maxmin, Jacoby & Maxmin, Philadelphia, Pa., for plaintiff-appellee.
 Before GOODRICH and STALEY, Circuit Judges, and STEEL, District Judge.
 STALEY, Circuit Judge.
 
 
 1
 At issue in this appeal is the legality of a jointly administered labor-management industrial fund in light of Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 186.
 
 
 2
 Plaintiff, Mechanical Contractors Association of Philadelphia, Inc. (hereinafter referred to as the Association), is a non-profit corporation composed of fifty of the mechanical contractors in the Philadelphia area. For approximately twenty years it has negotiated, on behalf of management, collective bargaining agreements with the unions which represent the employees of its members. These employee representatives, Local Unions 690, 428, and 420 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO, were the defendants in the action below. The collective bargaining agreements negotiated by plaintiff have been adopted by all mechanical contractors engaged in the industry in the area, that is, the Pennsylvania counties of Philadelphia, Montgomery, Bucks, Chester, and Delaware, as setting the pattern governing wages, hours, and working conditions. In addition, the plaintiff association bears the cost and provides the services for management's participation in this industry's health and welfare funds, apprentice training programs, joint arbitration procedures, and joint conference committees.
 
 
 3
 In late August and early September of 1956, collective bargaining agreements were executed by the Association and Local Unions 690, 420, and 428, covering a period of three years, beginning May 1, 1956. Pursuant to the provisions of Article IX of the agreements all employers are required to contribute 19 cents for each hour worked by each of its employees. The fund created thereby is deposited in the First Pennsylvania Banking and Trust Company and was to be administered by a joint board of trustees, consisting of three members to be appointed by the Association and three by the union, operating under an agreement and declaration of trust to be executed by the parties. The declaration of trust has never been executed because of the dispute concerning the legality of the joint board provisions. However, contemporaneous with the execution of the collective bargaining agreement the parties entered into a supplemental agreement for the purpose of clarifying Article IX of the master contract. It provides that pending appointment of the joint board of trustees, the designated depository is directed to turn over 16½ cents out of the 19 cent hourly contribution to the trustees of existing funds to be administered pursuant to pre-existing trust instruments.
 
 
 4
 The remaining 2½ cents, known as the Industry Fund, was to be held in escrow by the depository pending a determination by the Department of Justice or United States District Court for the Eastern District of Pennsylvania of the legality of its joint administration.[1] The supplemental agreement provided that if joint administration was held to be lawful the depository was to pay over the fund to the joint board of trustees and it in turn was to turn over $50,000 annually to the Association for its use in any manner whatsoever, provided that no part of it should be used for advertising, propaganda, or other purposes inimical to the interests of the union. The remaining portion of the fund was to be turned over to the Association only after approval by an affirmative vote of at least two management and two labor trustees of projects proposed by the Association. After the funds were turned over to the Association in either way, it was to be solely responsible without any interference by the joint board of trustees or the union.
 
 
 5
 In the event that it was decided that the fund was lawful but joint administration unlawful, the depository was to turn over the contribution directly to the Association. Lastly, if it was decided that the establishment of the fund per se was unlawful, the money was to be returned to the contributors. However, pending resolution of the question of legality, the depository was authorized to turn over to the Association 1½ cents of the contribution of 2½ cents.
 
 
 6
 The supplemental agreement set out the purposes for which the Industry Fund was created as follows: paying the operating costs of the Association, including but not limited to, the expenses of conducting public relations, public education in regard to the heating, piping, and air conditioning industry, promotion of stability in labor-management relations; paying the employer's costs of collective bargaining on an industry-wide basis; maintaining facilities for arbitration and adjustment of grievances; creating and administering jointly with labor the health and welfare fund, joint apprenticeship training program and comparable programs; and guaranteeing, by means of surety bond coverage, the payment by each employer of his contributions into the various industry programs.
 
 
 7
 Pursuant to the terms of the supplemental agreement, the Association requested an opinion from the Department of Justice in the form set forth therein. In submitting the question, the Association took the position that joint administration of the Industry Fund was unlawful.[2] Local 420 contended, on the contrary, that such administration was lawful. The Department of Justice indicated that it could give no formal opinion inasmuch as the application of the statute involved criminal sanctions; however, it did state "we can advise you that if the fund were under the exclusive management and control of the employers who maintained it by their contributions no question would arise of the validity of the trust under the (A) proviso of Section 302(c) (5). The reason for this is, of course, that the payments to the trustees would not be payments to `representatives' of the employees within the meaning of Section 302(a) and (b), and hence not within the prohibitions of those subsections." Local 420 contended that this answer was not dispositive of the controversy and, as a result, the Association brought an action in the District Court for the Eastern District of Pennsylvania seeking a decree that the Industry Fund is lawful and contributions to it enforceable; that joint administration of labor and management is unlawful; and that the Fund may only be administered by the employer contributors. The district court rendered an opinion and entered a decree on September 11, 1958, in substantially the form requested by the Association.
 
 
 8
 The Association contends that the reply of the Department of Justice to its inquiry is a definitive opinion such as was contemplated by the supplemental agreement but does not press that point here. It does contend vigorously that the decision rendered by the district court is clearly a determination such as was contemplated by the supplemental agreement and dispositive of the issues and under the agreement there was no right of appeal. However that may be, we need not determine these issues for the view which we take of the substantive question disposes of the case.
 
 
 9
 Section 302(a)[3] of the Labor Management Relations Act of 1947 proscribes the giving by an employer to any representative of his employees, who are employed in an industry affecting commerce, of any money or other thing of value. Subsection (b)[4] thereof makes it equally unlawful for any representative of employees to receive or accept any money or other thing of value from the employer of such employees. A number of exceptions are contained in subsection (c); however only (5) is in any way relevant to this case.[5] In essence, it excepts from the prohibitions of (a) and (b) payments to welfare funds complying with its provisions. The appellant does not contend that the Industry Fund complies with the terms of this exception.
 
 
 10
 Rather, it contends that the joint board or the union members thereof are not "representatives" within the meaning of Section 302 and, even if they are, that the contributions to the Industry Fund do not constitute payment or delivery of money or anything of value to them. In support of the former contention, the appellant, relying in part on Sheet Metal Contractors Ass'n v. Sheet Metal Workers International Ass'n, 9 Cir., 1957, 248 F.2d 307, certiorari denied, 1958, 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 354, and Conditioned Air & Refrigeration Co. v. Plumbing and Pipe Fitting Labor-Management Relations Trust, D.C.S.D.Cal.1956, 159 F.Supp. 887, affirmed Per Curiam, 9 Cir., 1958, 253 F.2d 427, evolves the principle that it is not the mere fact of joint administration which runs afoul of Section 302 but the character of the functions performed by the joint administrators.
 
 
 11
 The Supreme Court in United States v. Ryan, 1956, 350 U.S. 299, 302, 76 S.Ct. 400, 403, 100 L.Ed. 335, explicitly stated that "in using the term `representative' Congress intended that it include any person authorized by the employees to act for them in dealings with their employers." Furthermore, it was indicated that "a narrow reading of the term `representative' would substantially defeat the congressional purpose." Page 304 of 350 U.S., at page 404 of 76 S.Ct. In light of the Ryan case, strained interpretations intended to limit the Act's operations are to be avoided. Thus, the essence of Section 302 may be summarized as follows: No fund derived from employer contributions may be administered by persons designated by a union unless the fund meets the standards set forth in Section 302(c) (5). Any employee-designee administering such fund not meeting the requirements of Section 302(c) (5) is a "representative" within the meaning of Subsections 302(a) and (b). As was stated in United States v. Ryan, 350 U.S. at page 305, 76 S.Ct. at page 404, "if `representative' means only the `exclusive bargaining representative,' the explicit limitations on welfare funds in § 302(c) (5) may be easily evaded. Payments made directly to union officials, or to other individuals as trustees, would apparently be excluded from § 302. Thus, a narrow construction would frustrate the primary intent of Congress." (Emphasis supplied.) Careful reading of the Sheet Metal and Conditioned Air cases convinces us that rather than supporting appellant's thesis, they are in substantial accord with the principle set forth herein. Further support for this proposition is contained in our earlier case of United Marine Division, ILA, Local 333, A. F. L. v. Essex Transportation Co., 3 Cir., 1954, 216 F.2d 410, 412, where we held that "They [the Congress] were forbidding money to be paid to representatives of unions unless through a trust fund, the requirements for which were set up in some detail [i. e., under § 302(c) (5)]." This conclusion we feel is inescapable from the structure and wording of the section. As was stated by Judge Hand in his dissenting opinion in United States v. Ryan, 2 Cir., 1955, 225 F.2d 417, 425, subsequently adopted by the Supreme Court, "Since * * * the purpose of subsection (c) is to state exceptions to the preceding subsections (a) and (b), the payments that subsection (c) covers would fall within (a) and (b) except for the exception."
 
 
 12
 Appellant's second contention that the contributions in question do not constitute payment or delivery of money or anything of value to the joint board or the union members thereof is equally untenable. It is their position that the provisions of the supplemental agreement make of the joint board a mere bank teller or conduit through which the funds pass. This assertion completely ignores the veto power lodged in the hands of the union designees on the board, for without the approval of two of them no payments could be made to the Association. A veto power over the uses to which funds may be put certainly constitutes an effective control of the fund. Such control of the use of the funds contributed by employers is comprehended within the broad statutory language utilized by Congress.
 
 
 13
 The form of the district court's decree, although objected to by appellant as being too broad, is substantially in accord with the supplemental agreement entered into by the union and therefore will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The following specific questions were to be posed:
 "A. Are the uses and purposes of the Industry Fund a lawful objective, and may the collection of said contribution be enforced in the manner and by the means provided for in said Collective Bargaining Agreement bearing even date herewith?
 "B. If the answer to the foregoing is in the affirmative, is joint administration thereof, by management and labor, lawful?
 "C. If the answer to Question A is in the affirmative, but in the negative as to Question B, then is the administration thereof solely by management, lawful?"
 
 
 [2]
 Local Union 690 has consistently concurred in this position and Local Union 428 took that position at argument below. Local Unions 690 and 428 agree to administration solely by plaintiff; but as it was the understanding of the three defendants that the Industry Fund would be a single fund, they desired agreement among all three unions
 
 
 [3]
 § 302
 "(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce." 29 U.S.C.A. § 186(a).
 
 
 [4]
 § 302
 * * * * *
 "(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value." 29 U.S.C.A. § 186(b).
 
 
 [5]
 § 302
 * * * * *
 "(c) The provisions of this section shall not be applicable * * * (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities." 29 U.S.C.A. § 186(c).