EMPLOYING PLASTERERS' ASSOCIATION OF CHICAGO, Plaintiff-Appellant,

v.

JOURNEYMEN PLASTERERS' PROTECTIVE AND BENEVOLENT SOCIETY OF CHICAGO, LOCAL NO. 5; Chicago Plastering Institute, Inc.; Bryon W. Dalton, Individually, as President of Chicago Plastering Institute, Inc., and as a Representative of Employees; Albert J. Forst, Individually, and as President of Local No. 5; Owen Hughes, Individually, as Secretary-Treasurer of Local No. 5, and as Treasurer of Chicago Plastering Institute, Inc.; Joseph McGuire, Individually, and as Vice President of Local No. 5; Jerry Fogarty, Individually, and as a Representative of Local No. 5; Daniel Heffernan, Individually, and as a Representative of Local No. 5; Frank Downey, Individually, and as a Representative of Local No. 5; Joseph T. Power, Individually, as Director of Chicago Plastering Institute, Inc., and as a Representative of Employees; and William Fischer, Individually, as Director of Chicago Plastering Institute, Inc., and as a Representative of Employees, Defendants-Appellees.

No. 12813.

United States Court of Appeals Seventh Circuit.
May 6, 1960.
Rehearing Denied June 22, 1960.

Knoch, Circuit Judge, dissented.

Matthew E. Murray, Seyfarth, Shaw, Fairweather & Geraldson, Henry E. Seyfarth, Joseph E. Wyse, Wilfred F. Rice, Jr., Chicago, Ill., for plaintiff-appellant, Employing Plasterers' Ass'n. of Chicago.

Thomas M. Thomas, Thomas B. Martineau, Kirkland, Ellis, Hodson, Chaf-

fetz & Masters, Chicago, Ill., for defendants-appellees, Chicago Plastering Institute, Byron W. Dalton, Joseph T. Power and William Fischer.

William T. Kirby, John J. Enright, Hugh J. McCarthy, Chicago, Ill., for defendants-appellees, Journeymen Plasterers' Protective & Benevolent Society of Chicago, Local No. 5; Albert J. Forst, Owen Hughes, Joseph McGuire, Jerry Fogarty, Daniel Heffernan, Frank Downey.

Before SCHNACKENBERG and KNOCH, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

This is an appeal from an order for judgment for the defendants dismissing an action for injunction and ancillary relief under Section 302(e) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 186(e).

Plaintiff-appellant, Employing Plasterers' Association of Chicago (hereinafter referred to as the "Association"), is a nonprofit trade corporation. At the commencement of this action, its members were about 45 out of an approximate total of 200 Chicago plastering contractors. A function of the Association is the negotiation and execution on behalf of its members of collective bargaining agreements covering wages, hours, and conditions of employment for plastering work performed in and about Chicago.

Defendant-appellee, Journeymen Plasterers' Protective and Benevolent Society of Chicago, Local No. 5 (hereinafter called "Local No. 5"), is an unincorporated trade union composed of journeymen and apprentice plasterers who are employed by Chicago plastering contractors, including contractor members of the Association. It is a chartered local of the Operative Plasterers and Cement Masons International Association. Local No. 5 has negotiated and executed the pertinent collective bargaining agreements of June 1, 1945 and June 1, 1955, with the Association.

Defendant-appellee, Chicago Plastering Institute, Inc. (hereinafter called the "Institute"), is a nonprofit Illinois corporation. It was incorporated in December of 1944 on application of Byron W. Dalton and Herman J. Mutter, members of Local No. 5, and Stephen Luczak, a plastering contractor and member of the Association. The purposes for which the Institute was originally organized were as follows:

"The advancement of plaster construction over inferior substitutes, by (1) education of the public, and (2) by sponsoring legislation calculated to preserve the health and safety of the public by the use of plaster construction, and (3) discourage attempts to pass legislation derogatory to plaster construction, and (4) to do those things which are necessary and proper to promote and enhance the plastering industry."

An amendment on December 7, 1945, added the following:

"5. Benevolent and charitable, and in furtherance of same but in limitation thereof, and obtaining, through others, of hospital, death and other benefits for members of the corporation employed by contractors engaged in the business of plastering construction.

"The above shall not include the payment of any direct sick or death benefits by the corporation, nor shall it be deemed to authorize the corporation to perform any of the functions of an insurance company."

The collective bargaining agreement between Local No. 5 and the Association provides for financial contributions to the Institute as follows: The Association agrees to assess and collect from its members and to contribute a certain number of cents per hour per man employed. Local No. 5 agrees to contribute a sum not to exceed a fraction of a cent per hour for each hour each of its mem-

bers is employed by contractor members of the Association.[1]

The organic structure of the Institute provides for two classes of membership: (1) Institute members consisting of Local No. 5 and contributing contractors, and (2) beneficial members composed of members in good standing of Local No. 5 employed by an Institute member. In addition, proprietors, executives, and employees of all Institute members are eligible for the benefits provided under the By-Laws on payment of certain dues.

Pursuant to the By-Laws which serve as its constitution, the management of the Institute affairs is vested in an eight member Board of Directors which also elects its officers. Four of the directors represent employer groups including the Association; the remaining four represent Local No. 5. In voting at Institute meetings, the number of Local No. 5 votes shall equal the number of votes of employers present. The President of the Institute, an ex-officio member of the Board of Directors, may cast the deciding vote in case of deadlock.

The Institute administers three funds: (1) a General Fund, (2) a Benevolent Fund, and (3) a Pension Trust. The directors in their discretion may variably distribute Institute income between the General Fund and the Benevolent Fund, subject to the limitation that 40 per cent of the gross proceeds must go to the General Fund.

Regular members of the Association are contributing members of the Institute and have supplied approximately 40 per cent of the Institute income. Members of the Association have also served on the Board of Directors or as officers of the Institute since its inception.

The individual defendants-appellees are members of Local No. 5, officers of said Local, or employee designees on the Board of Directors of the Institute.

The complaint herein alleges that defendants are "representatives" of employees; that they are receiving contributions from employers for the purpose of providing employee welfare benefits; that the contributed funds are not administered in accordance with Section 302; and that said contributions are, therefore, in violation of Section 302 (a–g).[2] In addition, there is alleged the unauthorized disbursement of said funds.

1. Under the 1955 agreement, the figures were 16 cents for the Association and ½ cent for Local No. 5.

2. Section 302 of the Labor Management Relations Act, 29 U.S.C.A. § 186, reads as follows:

"§ 186. *Restrictions on payments and loans to employee representatives, labor organizations, officers and employees of labor organizations, and to employees or groups or committees of employees; exceptions; penalties; jurisdiction; effective date; exception of certain trust funds*

"(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce; or
* * * * *

"(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.
* * * * *

"(c) The provisions of this section shall not be applicable * * * (5) with respect to money or other thing of value paid to a trust fund established by such representative for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided*, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or acci-

The Association demands that violations of Section 302 be enjoined by restraining defendants from demanding, coercing, and accepting employer contributions, and from making further disbursements of funds now in the possession of the Institute. The Association also asks for the appointment of a receiver in respect to said funds and for an accounting of receipts and disbursements of employer contributions from date of the inception of the Institute.

The record in this case, consisting of stipulations and plaintiff's case on trial, contains evidence bearing on the allegedly unauthorized disbursements of Institute funds. Specific instances of asserted maladministration include the receipt of insurance commissions by Byron W. Dalton, the Institute President; loans without notes or interest; misuse of a home constructed as a "humane serv-

ice for a good cause"; irregularities in the issuance of a $300,000 mortgage; the appointment and remuneration of building inspectors of the City of Chicago; expenditures for experimental work performed by contractors at the home of a certain alderman; the bestowing of honorary lifetime memberships in the Institute on Chicago political figures and others who thereby received gratis benefits; and expenditures for attorneys' fees and political contributions.

The conclusions of the trial judge as set forth in the decision on defendants' motion to dismiss [3] may be summarized as follows: The legislative purpose in the enactment of Section 302 is the prevention of union-management corruption and union war chests and the guarantee of proper administration of employee welfare funds. These congressional objectives require that a cause of action

dent insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; * * *.

"(d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both.

"(e) The district courts of the United States and the United States courts of the Territories and possession shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of sections 101–110 and 113–115 of this title.

\*    \*    \*    \*    \*

"(g) Compliance with the restrictions contained in subsection (c) (5) (B) of this section upon contributions to trust funds, otherwise lawful, shall not be applicable to contributions to such trust funds established by collective agreement prior to January 1, 1946, nor shall subsection (c) (5) (A) of this section be construed as prohibiting contributions to such trust funds if prior to January 1, 1947, such funds contained provisions for pooled vacation benefits. June 23, 1947, 3:17 p.m., E.D.T., c. 120, Title III, § 302, 61 Stat. 157."

3. Reported as Weir v. Chicago Plastering Institute, Inc., D.C.N.D.Ill.1959, 177 F. Supp. 688.

under Section 302(e) must be directly related to the prevention of these evils. Section 302(e) was enacted primarily for the purpose of giving employees the right to challenge the administration of their funds in the federal courts and does not vest jurisdiction in the district court to entertain this cause of action at the instance of the employer.

An additional ground for dismissal was based on the knowledge of the allegedly illegal acts chargeable to the Association.

The decision further reveals the court's conditional holdings had the action been brought by a proper party. The court would find that employer payments to the Institute were payments to a "representative" of the employees. The court would also find that acceptance of employer contributions would constitute a violation of Section 302 because of the discretion vested in the directors of the Institute to distribute variable amounts between the General and the Benevolent Funds, the latter of which does not comply with the requirements of Section 302 (c) (5). Furthermore, defendants' recent attempts at compliance with the provisions of that section would not bar an action by employees, and in such an action the court would have jurisdiction to grant the relief requested here.

We do not agree that the Association may not maintain this action for injunction.

■ Employees have a primary, if not exclusive right to bring an action for injunction, receivership, and accounting based on alleged misuse of funds held in trust for their benefit. Such an action may properly lie in the state courts under established principles of equity. The Labor Management Relations Act does not create jurisdiction in the federal courts to entertain employees' claims based solely on the alleged diversion or conversion of their welfare funds.

Section 302 is aimed primarily at the prevention of possible abuse and not at providing a remedy for abuse actually perpetrated. To that end the section de-

clares that the payment and acceptance of employer contributions to employee welfare funds between employers and "representatives" of employees, respectively, shall be unlawful unless certain safeguards are observed in the administration of the welfare funds. Section 302(e) provides the civil remedy of injunction to restrain violations of the section; that is, to restrain payment or acceptance of employer contributions to welfare funds that do not meet the statutory safeguards in their administration. Where it is established that payment and acceptance is between employers and "representatives" of employees, the issue in a suit for injunction becomes the legality of the welfare funds as measured by the statutory standards of administration.

■ Allegation and proof of actual misuse of funds are not material to an action for an injunction under Section 302(e) except insofar as there may be a demand for receivership and accounting incidental to the injunctive relief requested. The question whether or not the scope of the civil injunctive jurisdiction created by Section 302(e) comprehends the granting of such ancillary remedies has not been settled. See the discussion of this problem in Copra v. Suro, 1 Cir., 1956, 236 F.2d 107, 114, 115.

■ Employers have a statutory duty to refrain from making welfare fund contributions to "representatives" of their employees unless the funds are administered as the statute provides. They are also charged with certain duties in the administration of such welfare funds to which they contribute. They must be a party to the written agreement which specifies the basis on which their contributions are to be made, and they are to share equally in the administration of the funds held in trust.

Employers who are thus charged with statutory duties and who may be subject to criminal penalties for violations of this section have a sufficient interest in the legality of welfare funds, as defined in the statute, to invoke the rem-

edy provided in Section 302(e) for alleged violations of the section. A literal reading of the statute as well as judicial applications of Section 302(e) support this conclusion. Such light as may be shed on the congressional intent in the enactment of the section by its legislative history does not militate against this determination.

In Copra v. Suro, supra, the court considered the question of who may be appropriate parties to a suit under Section 302(e) and observed as follows, page 114:

> " * * * That section does not indicate who may sue or who may be sued, but the legislative history suggests, in a general way, that employees, unions, trustees, and employers were all intended to be afforded the benefit and the liability of the equity jurisdiction over welfare funds, as appropriate in a particular case. * * * "

In a number of actions to test, directly or indirectly, the legality of employee welfare funds under Section 302, the right of employers to maintain the suit has not been challenged on the ground that this is the exclusive province of the employees. See for example: William Dunbar Co., Inc. v. Painters & Glaziers District Council No. 51, D.C.D.C.1955, 129 F.Supp. 417; Conditioned Air & Refrigeration Co. v. Plumbing and Pipe Fitting Labor-Management Relations Trust, D.C.S.D.Cal.1956, 159 F.Supp. 887, affirmed per curiam, 9 Cir., 1958, 253 F. 2d 427; Shapiro v. Rosenbaum, D.C.S.D. N.Y.1959, 171 F.Supp. 875 (stockholders' derivative suit); South Louisiana Chapter, Inc., National Electrical Contractors Ass'n v. Local Union No. 130, D.C.E.D.La.1959, 177 F.Supp. 432; Sheet Metal Contractors Ass'n of San Fran-

cisco v. Sheet Metal Workers International Ass'n, 9 Cir., 1957, 248 F.2d 307, certiorari denied 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 354; and Mechanical Contractors Ass'n of Philadelphia v. Local Union 420, 3 Cir., 1959, 265 F.2d 607.

These cases, with one exception, may be distinguished from the instant suit on the ground that the relief sought therein was limited to restraint of the alleged statutory violation, and that there was no demand for receivership and accounting. In the South Louisiana Chapter case an employers' association asked for this ancillary relief incidental to a request for an injunction. Since that court found no violation of the statute, the issue of whether or not the disposition of funds required "additional" parties was not reached.

Other parties, such as employees, union members, former union members, unions, trustees and custodians of funds, have invoked the injunctive remedy of Section 302(e) without challenge to their status to sue thereunder.[4] The dictum in A. H. Bull Steamship Co. v. Seafarers' International Union, 2 Cir., 1957, 250 F. 2d 326, 330, certiorari denied 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414, that Section 302 vests "certain injunction powers in the courts when the National Labor Relations Board initiated the court proceedings" apparently has had no literal application.

The congressional declaration of purpose in the enactment of the Labor Management Relations Act, 1947, is stated in Section 1(b) of the Act, 29 U.S.C.A. § 141(b), as follows:

> "It is the purpose and policy of this chapter, * * * to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide

---

4. Wilkens v. De Koning, D.C.E.D.N.Y. 1957, 152 F.Supp. 306 (union member); Moses v. Ammond, D.C.S.D.N.Y.1958, 162 F.Supp. 866 (former members of a union); United Marine Division, I.L.A., Local 333, A.F. of L. v. Essex Transportation Co., 3 Cir., 1954, 216 F.2d 410 (union and individuals); In re Brick-

layers' Local No. 1 of Pa. Welfare Fund, D.C.E.D.Pa.1958, 159 F.Supp. 37; Sanders v. Birthright, D.C.S.D.Ind.1959, 172 F.Supp. 895 (trustees); and Philadelphia National Bank v. Employing Bricklayers' Ass'n of Philadelphia, D.C.E.D.Pa.1959, 169 F.Supp. 591 (custodian of funds by equitable interpleader).

orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, * * *."

Employer contributions to employee welfare funds are in the nature of compensation. Cf. Lewis v. Benedict, 1960, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442. Such employer contributions are proper objects of collective bargaining between management and labor. The employers' obligations to make payments are fixed by the terms of the collective bargaining agreement and are comprehended within the term, "their relations affecting commerce." The right to test the legality of employer contributions assumed under a collective bargaining agreement is within the rights prescribed by the Act. It is available to employees and employers, as well as to such other parties as may be directly concerned with the payment, acceptance, and administration of welfare funds. Section 302(e) confers jurisdiction on the district court to entertain such a cause of action at the instance of the Association on behalf of its contractor-contributor members.

A comment on the legislative history of Section 302 in Copra v. Suro, supra, points out that this is not necessarily definitive of the congressional intent in the enactment of the section. The court states as follows at page 115 of 236 F.2d:

" * * * The way in which § 302 was presented, however, necessarily causes the legislative history to be lacking in conclusiveness. In both the 79th Congress and the 80th Congress, it came into the consideration of an omnibus labor bill by introduction from the floor of the Senate, so that the committee reports, which usually give the best explanations of how a complicated section is supposed to work, say nothing on the whole subject of § 302 except relatively brief references in minority sections of the reports. There was extensive discussion on the floor, particularly in the Senate, but this history is subject to the usual infirmities, by way of ambiguity, of legislative debates. See, generally, 92 Cong.Rec. 4809, 4893-94, 4897-99, 5040-41, 5277, 5433, 5494-96 (1946) ; S.Rep. No. 105, 80th Cong., 1st Sess. 52 (1947) ; 93 Cong.Rec. 4678, 4746-53 (1947)."

The defense of unclean hands does not here avail against a statutory right to challenge violations of Section 302. The knowledge of payments, assumed under a collective bargaining agreement, and participation in the administration of the welfare funds antedate the decision in United States v. Ryan, 1956, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335, which casts doubt on the validity of these transactions. Unilateral termination by the employer-contributors of allegedly illegal contractual obligations may subject them to an action for breach of the collective bargaining agreement. The benefit conferred upon the Association by a test of the legality of the welfare funds and a restraint of violations of Section 302 is the bestowing of legal posture on payments and on the administration of welfare funds and the removal of the onus of participation in a continuing violation which may subject the Association to possible criminal sanctions.

Since allegation and proof of misuse of funds are not material to a cause of action for injunction under Section 302 (e), participation in the alleged misuse is not a defense to such a claim.

Under these circumstances the right of the Association to bring this suit is not impaired by its knowledge and participation in the alleged statutory illegalities. To hold otherwise would, in effect, severely limit the availability of the injunctive remedy. Any party having a right to sue thereunder would almost certainly have participated in the alleged violations of Section 302—employers by the making of outlawed payments, unions by outlawed acceptance thereof by employees' "representatives," employees by receipt of benefits illegally disbursed, and trustees by sharing in the maladministration of the funds.

The principle that equity will not aid a law violator does not extend to refusing him a statutory remedy whereby he personally derives no greater benefit than the termination of his unwillingly continued participation in the violation. Cf. Carolene Products Co. v. Evaporated Milk Ass'n, 7 Cir., 1938, 93 F.2d 202; Northwestern Oil Co. v. Socony-Vacuum Oil Co., Inc., 7 Cir., 1943, 138 F.2d 967; and Jewel Tea Co., Inc. v. Local Unions No. 189, etc., 7 Cir., 1960, 274 F.2d 217, 223, certiorari denied 362 U.S. 936, 80 S.Ct. 757, 4 L.Ed.2d 747.

The question whether or not the Association, comprised of only about one-fifth of all contractor-contributors to the funds in question, is entitled to the relief as demanded—that is, the enjoining of all contributions—is not before this court, nor do we pass on the questions of the availability of the defense of unclean hands and of who may be proper parties to an accounting and receivership. The application of the saving provisions of Section 302(g) is also not considered here. The trial court granted defendants' motions at the close of plaintiff's case. These other questions have not been determined by the court after complete hearing.

This decision is limited to holding that the district court has jurisdiction under Section 302(e) to entertain an action to test the legality of employee welfare funds and to enjoin violations of Section 302 at the instance of the Association on behalf of its employer-contributor members.

For the foregoing reasons the order of the district court dismissing the action is hereby reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

KNOCH, Circuit Judge, dissenting. I reluctantly find myself in disagreement with my learned brethren. For the reasons outlined in the opinion of the distinguished District Judge, D.C.N.D.Ill. 1959, 177 F.Supp. 688, I would affirm the judgment of the court below.