**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, Plaintiff-Appellant,**

v.

**SEATRAIN LINES, INC., and Sea Land Services, Inc., Defendants-Appellees.**

**No. 208, Docket 28471.**

United States Court of Appeals Second Circuit.

Argued Dec. 11, 1963.

Decided Jan. 27, 1964.

Thomas W. Gleason, New York City (Julius Miller, New York City, on the brief), for paintiff-appellant.

Constantine P. Lambos of Lorenz, Finn & Giardino, New York City (Luis M. Neco, New York City, on the brief), for defendant Seatrain Lines, Inc.

Herbert Burstein, of Zelby & Burstein, New York City, for defendant Sea Land Services, Inc.

Before CLARK,* SMITH and HAYS, Circuit Judges.

* The late Judge CHARLES E. CLARK heard oral argument on this case but did not participate in its decision.

**HAYS, Circuit Judge.**

The International Longshoremen's Association appeals from the dismissal of its complaint seeking a declaratory judgment that it may lawfully receive certain moneys from the defendants under an agreement between the ILA and the defendants. The ILA is a labor organization which represents the employees of the defendants within the meaning of Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, 61 Stat. 157 (1948), as amended, 73 Stat. 537 (1959), 29 U.S.C. § 186 (Supp. IV, 1959–62).[1] The employers resist payment to the ILA on the ground that performance of the agreement would violate Section 302 which, with certain exceptions, prohibits payments by an employer to a labor organization that represents any of its employees. On the ILA's motion for summary judgment, the district court determined *ex motu suo* that the dispute was only a friendly difference of opinion concerning the interpretation of Section 302, that it would be improvident to adjudicate the scope of this penal statute in a suit to which the government was not a party, and that the controversy was therefore nonjusticiable. We hold that a justiciable controversy is presented and we resolve that controversy in favor of the defendants.

The facts are not in dispute. During the course of collective bargaining negotiations in 1959, the ILA objected to the employers' use of pre-loaded cargo containers, a form of automation, in the Port of New York. The use of containers reduced the employment of ILA members and thereby adversely affected that portion of the ILA's income that is derived from a dues check-off based on the hours worked by each employee. After extensive discussions the employers agreed to pay 28 cents per gross ton of "containerized' freight handled through the Port of New York into a fund to be administered by trustees appointed by the ILA and the employers. The ILA, however, demanded that part of the fund be paid to it as compensation for its loss of revenue. This demand was rejected by the employers on the ground that such a payment would violate Section 302. In an effort to avoid labor strife over the issue the parties stipulated that 10% of the moneys paid to the trustees would be put in escrow pending a determination by a federal court or the United States Attorney General of the legality of payment to the ILA. The parties agreed that if payment was declared illegal, they would renegotiate the disposition of the escrow fund. The Attorney General refused to render an opinion, and the union instituted this suit for a declaratory judgment.

## I.

A claim for declaratory relief must present a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). We think the present controversy satisfies that standard. The parties have a bona fide controversy concerning the application of Section 302 to a particular, definite agreement. They stand in a legal relationship in which their legal interests are adverse. Resolution of the controversy will determine the ILA's legal right to secure the 10% payment which it claims. "Such a dispute is manifestly susceptible of judicial determination. It calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." Aetna Life Ins. Co. v. Haworth, supra, 300 U.S. at 242, 57 S.Ct. at 465, 81 L.Ed. 617. The fact that the dispute is a "friendly" one in the sense that the

---

1. Section 302 provides in relevant part:
   "(a) It shall be unlawful for any employer or association of employers * * * to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value * * *

   "(2) to any labor organization * * * which represents * * * any of the employees of such employer who are employed in an industry affecting commerce."

parties have agreed to submit it to the courts for resolution is, of course, not a valid objection to rendering a declaratory judgment.

Nor can it be improper to adjudicate the scope of Section 302 in a suit between private parties since the Section itself provides for just such adjudication. While it is true that violation of the Section subjects the violator to penal sanctions, the Section is also enforceable by a civil action at the instance of private persons. Under Section 302(e) an action may be brought to enjoin the performance of an agreement that violates Section 302. Actions under this provision have been brought by union members, Carroll v. Associated Muscians of Greater New York, 284 F.2d 91 (2d Cir. 1960); Local No. 2, Operative Plasterers and Cement Masons Intern. Ass'n v. Paramount Plastering, Inc., 310 F.2d 179 (9th Cir. 1962), cert. denied, 372 U.S. 944, 83 S.Ct. 935, 9 L.Ed.2d 969 (1963), and by employers, Employing Plasterers' Ass'n v. Journeymen Plasterers' Protective & Benevolent Soc., 279 F.2d 92, 97–99 (7th Cir. 1960); Sheet Metal Contractors Ass'n v. Sheet Metal Workers Intern. Ass'n, 248 F.2d 307 (9th Cir. 1957), cert. denied, 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 354 (1958).

In these cases the courts have not hesitated to define the area of proper application of Section 302, though, of course, the United States was not a party.

Declaratory judgments adjudicating the scope of Section 302 were granted in Local 2, Operative Plasterers & Cement Masons Intern. Ass'n v. Paramount Plastering, Inc., supra and Mechanical Contractors Ass'n v. Local Union 420, 265 F.2d 607 (3d Cir. 1959).

## II.

Section 302(a) of the Labor Management Relations Act prohibits the payment by an employer of "any money or other thing of value" to a labor union that represents its employees who are employed in an industry affecting commerce. Section 302(b) prohibits the receipt of such a payment by a labor union. The defendants are employers in an industry affecting commerce. The ILA is a labor organization representing their employees. The agreement the ILA seeks to enforce is for the payment of a sum of money by the employers to the ILA. On its face, then, the agreement violates the statute.

The ILA, however, contends that the legislative history of the statute shows that it interdicts only payments obtained by bribery or extortion, and that in any event the agreement is excluded from the operation of the statute by Section 302(c) (2), which exempts:

"the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress."

The ILA's first contention cannot be sustained. The prohibitory sweep of the statute encompasses more than conscious wrongdoing.

"That the section does include situations that do not involve conscious wrongdoing is apparent from the fact that the exceptions are all devoid of that element. Strictly speaking, it may be an impertinence to discuss this question at all and not to treat the passage in the Supreme Court's opinion [in United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956)], as authoritative which declared that 'as the statute reads, it appears to be a criminal provision, *malum prohibitum*, which outlaws all payments, with stated exceptions, between employer and representative.'"

United States v. Ryan, 232 F.2d 481, 483 (2d Cir. 1956).

Nor can the agreement be considered a settlement of a claim within the meaning of the exception established by Section 302(c) (2). Obviously, if

the ILA's argument were accepted the proscriptive effect of the statute would be nullified, since every payment by an employer to a union could be characterized as a settlement of a claim or demand made by the union. We need not now attempt to define in detail the area in which Section 302(c) (2) affords immunity. For the present case it is sufficient that we hold that whenever some other provision of Section 302(c) provides a more particularized exception, the transaction must satisfy the requirements of that other exception to be exempt. Thus, contributions to union welfare funds which have been made pursuant to a collective bargaining agreement or an arbitration award, and might therefore be thought to fall within the exceptions of Section 302(c) (2), are to be scrutinized under the standards set out in Section 302(c) (5), which provides a particularized exception for payments to certain trust funds. See, e. g., Local 2, Operative Plasterers & Cement Masons Intern. Ass'n v. Paramount Plastering, Inc., supra (collective bargaining agreement); Sheet Metal Contractors Ass'n v. Sheet Metal Workers Intern. Ass'n, supra (same); Minkoff v. Scranton Frocks, Inc., 181 F.Supp. 542, 547–549 (S.D. N.Y.), aff'd on opinion below, 279 F.2d 115 (2d Cir. 1960) (arbitration award).

■ Here, the payment is in lieu of a dues check-off. Section 302(c) (4) exempts:

"money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner."

We read Section 302(c) (4) as providing the exclusive method by which employers may contribute to the general purpose funds of unions and as making payments in lieu of check-off which do not meet the requirements of Section 302(c) (4) illegal. There is no contention that the proposed payment meets the requirements of Section 302(c) (4).

■ Apart from questions of statutory construction it seems clear to us that the present controversy involves precisely the kind of payment which Section 302 was designed to prohibit. The legislative history of the statute demonstrates that the reason for its adoption was in large part to assure that royalties on each ton of coal mined by members of the United Mine Workers (cf. payments on each ton of "containerized" shipments) required by an agreement between the coal operators and the union would not be paid to the union for use as a part of its general funds or otherwise than as a welfare fund jointly administered by employers and the union. Sen.Rep.No.105, 80th Cong., 1st Sess. 52 (1947), reprinted in 1 NLRB, Legislative History of the Labor Management Relations Act, 1947, 458 (1948); 93 Cong. Rec. 4876–4877 (remarks of Senator Taft), reprinted in 2 NLRB, Legislative History of the Labor Management Relations Act, 1947, 1310–1313 (1948); 93 Cong.Rec. 4805 (remarks of Senator Byrd), reprinted in 2 NLRB, Legislative History of the Labor Management Relations Act, 1947, 1305 (1948). Obviously no exception from the inhibitions of Section 302 was intended to permit such payments where the union's claim to them is based on a collective bargaining agreement or other contract.

### III.

■ For the reasons which we have stated the plaintiffs cannot recover the declaratory judgment which they seek and their motion for summary judgment must be denied. Further it is evident that defendants are entitled to a declaratory judgment in their favor. The complaint alleges that the parties "need a declaration of their rights." The answer of defendant Sea Land Services prays for a decree "to resolve the disputes and controversies" and the answer of defendant Seatrain Lines "requests judgment de-

claring that the payment described in the complaint violates the provisions of 29 U.S.C. 186." This court therefore has power to order the entry of a declaratory judgment for the defendants, even in the absence of a formal counterclaim demanding such relief. American Cas. Co. v. Windham, 107 F.2d 88 (5th Cir. 1939), cert. denied, 309 U.S. 674, 60 S.Ct. 714, 84 L.Ed. 1019 (1940); Penn Mut. Life Ins. Co. v. Forcier, 103 F.2d 166 (8th Cir.), cert. denied, 308 U.S. 571, 60 S.Ct. 86, 84 L.Ed. 479 (1939).[2]

The determination of the district court that the case presented no justiciable controversy is reversed and the case is remanded with directions to enter a declaratory judgment for the defendants.

2. When on plaintiff's motion for summary judgment the undisputed facts show that plaintiff has no case, this court has power to grant summary judgment for the defendant even though the defendant has made no cross-motion for summary judgment, Local 33, Intern. Hod Carriers Union v. Mason Tenders Dist. Council, 291 F.2d 496, 505 (2d Cir. 1961); Procter & Gamble Independent Union v. Procter and Gamble Mfg. Co., 312 F.2d 181 (2d Cir. 1962), cert. denied, 374 U.S. 830, 83 S. Ct. 1872, 10 L.Ed.2d 1053 (1963); 6 Moore, Federal Practice ¶¶56.12 (particularly p. 2091), 56.27 [2] (2d ed. 1953).