Accordingly, defendant Amtrak's motion to dismiss plaintiffs' complaint in Case No. 78–60 C (1) will be granted.

Donald **SALVUCCI**

v.

**GRAVURE DIVISION OF TRIANGLE PUBLICATIONS, INC.**

No. 79–1307.

United States District Court, E. D. Pennsylvania.

June 30, 1980.

Kenneth D. Freeman, Philadelphia, Pa., for plaintiff.

Richard S. Meyer, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff Donald Salvucci worked for defendant Gravure Division of Triangle Publi-

cations from 1952 to 1976, in which year he was granted a leave of absence to serve as Business Manager of Philadelphia Newspaper Printing Pressmen's Union No. 16, a labor organization which represented many of Gravure's employees. On July 26, 1978, when Salvucci was still on leave as Business Manager, Gravure ceased operations. Salvucci served as a member of a bargaining committee composed of representatives of several Gravure unions which negotiated with Gravure a written "Agreement of Settlement," dated October 20, 1978, providing severance benefits for various categories of Gravure's employees. That written agreement provided that "severance pay" (the mode of whose calculation was specified) should go to "[r]egular situation holders represented by the aforenamed labor organizations . . . (a) employed as of August 5, 1978 who worked at Gravure during the 1978 calendar year or (b) who as of July 26, 1978 were absent on bona fide sick leave . . . for which on July 26, 1978 they were receiving sick leave payments . . and (c) in the case of . . . Philadelphia Newspaper Printing Pressman's Union No. 16 only those regular situation holders whose names appear on Exhibit . . . 'D' attached hereto. . . ." Salvucci's name appeared on Exhibit D but his name was lined out, denoting what Salvucci and Gravure have stipulated to be the fact—namely, that "Plaintiff [Salvucci] was specifically excluded from the agreement dated October 20, 1978. . . ." Salvucci and Gravure have further stipulated that: "It was orally agreed between the representatives of the defendant and the bargaining committee, including Salvucci, which represented the unions, during the collective bargaining negotiations which culminated in the signing of the agreement of October 20, 1978, that defendant would pay severance benefits to Salvucci if a court of competent jurisdiction would declare such payment not violative of Section 302 of the Labor Management Relations Act." Defendant Gravure's apprehensions with respect to Section 302 arose from the statute's pronouncement that it is "unlawful"—indeed, a misdemeanor punishable by a fine of up to $10,000 and imprisonment for up to a year—for "any employer . . . to pay . . . or agree to pay . . . any money or other thing of value . . . to any labor organization, or any officer or employee thereof, which represents . . any of the employees of such employer who are employed in an industry affecting commerce . . . ." 29 U.S.C. § 186.

Having received no severance benefits, Salvucci sued Gravure in this court, pursuant to Section 301 of the Labor Management Relations Act, which confers on district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." 29 U.S.C. § 185. Salvucci's pleading, elaborately styled a COMPLAINT FOR DECLARATORY RELIEF IN AN ACTION BY DONALD SALVUCCI IN RESPECT TO SETTLEMENT AGREEMENT UPON TERMINATION OF OPERATIONS OF DEFENDANT, seeks a declaratory judgment "that plaintiff . . . was an employee covered by the Agreement of Settlement" and "that plaintiff is entitled to any and all benefits due him as a result of the Agreement of Settlement signed by the Philadelphia Newspaper Printing Pressmen's Union No. 16 and Defendant."

I.

The complaint, bottomed on the Agreement of Settlement, a copy of which is annexed thereto, fails to state a cause of action. As already noted, plaintiff Salvucci's name was excised from the list of Pressmen's Union No. 16 members appended to the Agreement of Settlement as eligible recipients of severance benefits. By stipulation, the parties have acknowledged that the excision of Salvucci's name was not inadvertent—he was "specifically excluded from the agreement." But if, for the purpose of judging the legal sufficiency of the complaint standing alone, one ignores the stipulation, the Agreement of Settlement still cannot be read as a contract whose benefits were intended to run to personnel

on extended leave of absence, as Salvucci had been for over two years before Gravure terminated operations on July 26, 1978: for, as already noted, the Pressmen's Union No. 16 members eligible for severance pay under the Agreement of Settlement were confined to those "(a) employed as of August 5, 1978 who worked at Gravure during the 1978 calendar year or (b) who as of July 26, 1978 were absent on *bona fide* sick leave . . . for which on July 26, 1978 they were receiving sick leave payments. . ." Thus, even were he not "specifically excluded" from the Agreement of Settlement, Salvucci would have no viable claim thereunder.

## II.

Although the complaint in terms relies only on the written Agreement of Settlement, it would betoken a mean-spirited insistence on the unproductive niceties of pleading to dismiss Salvucci's case solely on the ground that the Agreement of Settlement cannot plausibly be read to support Salvucci's claim for severance benefits. This for the reason that, as pointed out above, the parties have by stipulation acknowledged the existence of another agreement which, arguably, may be of comfort to Salvucci. It may be helpful to repeat here the relevant language of the stipulation:

> It was orally agreed between the representatives of defendant and the bargaining committee, including Salvucci, which represented the unions, during the collective bargaining negotiations which culminated in the signing of the agreement of October 20, 1978, that defendant would pay severance benefits to Salvucci if a court of competent jurisdiction would declare such payment not violative of Section 302 of the Labor Management Relations Act.

There would appear to be two ways of construing the described oral agreement. Under one possible interpretation, Gravure had simply covenanted to "pay severance benefits [presumably in consonance with the benefit formula embodied in the Agreement of Settlement] to Salvucci" on the happening of an event which would free Gravure from its anxiety about criminal liability—namely, a favorable decision (i. e., that the contemplated payments would not trench upon Section 302's employer-thou-shalt-nots) handed down by some court competent to determine the matter. Under a more complex alternative interpretation, Gravure has orally agreed to pay the requested benefits if a competent court surveying the entire Salvucci-Gravure relationship *dehors* the inapplicable Agreement of Settlement perceives both a Gravure obligation and/or desire to pay benefits to Salvucci and no Section 302 impediment.

### A.

The first of these two possible interpretations of the stipulated oral agreement seems to reduce itself to an agreement that Salvucci and Gravure would repair to court and debate—in light of the purposes Congress could be said to have had in mind in enacting the Labor Management Relations Act—the applicability of Section 302's prohibitions and exemptions to Gravure's evident readiness (if protected by a judicial *non obstat*) to pay severance benefits to Salvucci.

The threshold—and insuperable—difficulty with an agreement of this form is that it is not amenable to the judicial process. The non-amenability can be stated in two ways, but they are essentially obverse formulations of the same proposition:

1. An agreement of this form is simply a registration of mutual promises to have a debate in a courtroom. It is not an aggregate of offer and acceptance which, viewed from the perspective of the corpus of federal labor contract law which informs Section 301 of the Labor Management Relations Act, imposes discernible rights and duties on anybody.

2. An agreement of this form is not a mode of access to the federal courts which is compatible with Article III's insistence on "cases and controversies." It appears to be the case that a union (and perhaps a union member) and an employer or an employers'

association can agree to seek a declaratory judgment from a federal district court with respect to the proper reach of Section 302. But this is permissible only when the district court is asked to relate Section 302 to an agreement other than, and antecedent to, the agreement to go to court—when, in short, "[t]he parties have a bona fide controversy concerning the application of Section 302 to a particular, definite agreement." *International Longshoremen's Ass'n v. Seatrain Lines, Inc.*, 326 F.2d 916, 918 (2d Cir. 1964). And see *Mechanical Cont. Ass'n of Philadelphia v. Local Union 420*, 265 F.2d 607 (3d Cir. 1959); cf. *Employing Plasterers' Ass'n v. Journeymen*, 279 F.2d 92 (7th Cir. 1960), *Sheet Metal Con. Ass'n v. Sheet Metal Wkrs. Int. Ass'n*, 248 F.2d 307 (9th Cir. 1957).

### B.

■ The second of the possible interpretations of the stipulated oral agreement seems more fruitful. In essence, it asks the question whether, taking into account the totality of the Long Salvucci-Gravure connection, there are equities or amenities which would, compatibly with Section 302, obligate, or at least allow, Gravure to pay severance benefits to Salvucci. With the question posed in this way, it then becomes appropriate to consider, against the background of Section 302's manifest purpose to frustrate illicit employer-union links, the exception to Section 302 which might seem particularly compelling in the present context: "The provisions of this section shall not be applicable . . . in respect to any money or other thing of value payable by an employer . . . to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer." 29 U.S.C. § 186(c)(1).[1]

There are, however, two substantial obstacles to reading the present record as one in which a 1978 (or later) Gravure payment to Salvucci could properly be viewed as "compensation" for, or payment "by reason of," past service as an employee, long and loyal as that service appears to have been:

1. When Salvucci became Business Manager of Local No. 16 and went on "leave of absence" status, the loss of benefits which the leave of absence entailed was spelled out in a letter of June 4, 1976 from Gravure's John J. Sheehan to Salvucci, with blunt specificity:

> This confirms the Company's agreement with the Union to place you, Donald Salvucci, on leave of absence during the balance of the term of our labor agreement with the Union for as long as you occupy the position of business manager of Newspaper Local # 16.

> Dating from the commencement of your leave of absence, May 8, 1976, the Company will not make any contributions to pension and health and welfare funds in your behalf nor will you be eligible for any other benefits which are available to active employees under the labor agreement. Likewise, you will not accrue for vacation and holiday pay. You will retain, however, your seniority standing on the list of Company pressmen for the term of this agreement or the termination of your employment in your capacity of business manager of Local # 16, whichever is earlier.

> I trust that this adequately expresses our agreement on this matter.

That potential severance pay was among the "benefits . . . available to active employees" which Salvucci unconditionally surrendered when he became Business Man-

---

1. Of the other exceptions, one has at least some minimal verbal plausibility: ". . . the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court . . . or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress." 29 U.S.C. § 186(c)(2). But to read the exception to permit a court to approve as a statutory "judgment" (or "compromise," "adjustment," "settlement," or "release") any employer's benevolent acquiescence in all or part of a union official's desire for a subvention, would encourage that exception to swallow up the prohibition. *International Longshoremen's Ass'n v. Seatrain Lines, Inc.*, 326 F.2d at 919–920.

 

ager was confirmed by the carefully crafted protocol of severance benefits for "[r]egular situation holders" embodied in the Agreement of Settlement in October of 1978.

2. Notwithstanding the apparently comprehensive 1976 agreement, reflected in the Sheehan letter, that Salvucci, while Business Manager, was to retain no entitlements except seniority as a pressman, it might still be possible to argue that a Gravure decision, when it ceased operations, to pay severance benefits to Salvucci should be regarded as retrospective added compensation for Salvucci's past employment, if Gravure had at the time adopted any such general recompensatory policy running in favor of persons on "leave of absence" status. But the evidence is to the contrary. Only one other Gravure pressman was on leave of absence when Gravure closed its doors. That person—Harry Sanders, Jr.— was on military leave, and Gravure refused to pay him severance benefits. His case was submitted to arbitration, and on September 7, 1979, an Arbitrator held that Mr. Sanders had a present entitlement to severance pay and sustained his grievance. *In the Matter of the Arbitration Between Philadelphia Newspaper Printing Pressman's Union No. 16 and Gravure Division of Triangle Publications*, Case No. 14 30 1950 78 S, September 7, 1979. But this ruling seems to have been predicated not on Mr. Sanders' general entitlement to severance pay, but rather on his special statutory entitlement to be treated as if he were an active employee for purposes of employee benefits while on military leave. 50 App. U.S.C. § 459(c). Mr. Sanders' case, in sum, demonstrates the very antithesis of any perceived Gravure pattern, contractual or otherwise, of rewarding employees on leave status with extra compensation for services long past.

If, against this background, Gravure were—either *ex gratia* or pursuant to bargaining—to have undertaken to pay severance benefits to just one person not on the active roster, and that one person had been a union official, there would appear no way of reconciling such an undertaking with Section 302. Accordingly, Salvucci's claim fails.

### III.

Wherefore, in an order filed concurrently with this opinion, judgment on the merits is entered for defendant.