PARAMOUNT PLASTERING, INC., a corporation, et al., Plaintiffs,

v.

LOCAL NO. 2 OF THE OPERATIVE PLASTERERS AND CEMENT MASONS INTERNATIONAL ASSOCIATION, an unincorporated voluntary association, et al., Defendants.

No. 463-60.

United States District Court
S. D. California,
Central Division.
June 5, 1961.

McLaughlin & Casey, by James A. McLaughlin and Earl Klein, Los Angeles, Cal., for plaintiff.

Mantalica, Barclay & Teegarden, by Lewis C. Teegarden, Los Angeles, Cal., for defendant unions.

Brundage, Neyhart, Grodin & Miller, by Eugene Miller, Los Angeles, Cal., for contractors.

YANKWICH, District Judge.

A complaint was filed on April 19, 1960 seeking an injunction under the provisions of § 302 of the Labor Management Relations Act, 29 U.S.C.A. § 186.

## I

### *The Pleadings, Issues and Proof*

The plaintiffs are employers who have signed collective bargaining agreements with the defendant unions. In the complaint reference is made to the specific provisions of the collective bargaining agreements under which three trusts were to be created. Each of the trust agreements and the collective bargaining agreements require the employers to contribute a certain sum per hour for each hour worked by an employee. Each trust specifies that there shall be an equal number of employer-designated trustees and an equal number of employee-designated trustees who shall be appointed by the union.

Under one provision of the Plastering Institute Trust, the trustees, after making provision for the administration of the trust, are to pay the monies over "to the proper Trust or program as provided for in the labor agreement".

There is no requirement in either the collective bargaining agreement or the trust agreement which specifies that the monies are to be spent in connection with medical and surgical benefits or for pensions within the requirements of § 302 (c) (5) of the Labor Management Relations Act. 29 U.S.C.A. § 186(c) (5).

The Southern California Plastering Institute Industry Program Trust is not a medical and surgical benefit trust or a

trust for providing pensions. The purpose of the trust is to carry on

"a program of public relations for the general welfare and advancement of the plastering industry, * * * "

and

"for the purpose of improvement of business conditions of the lathing and plastering industry, * * * ".

The purpose of the Labor Management Relations Trust is not that of a pension or a medical and surgical benefit trust. Its purpose is

"for the common interest of labor-management relations of the the parties * * * ".

The complaint alleges that all the trust agreements are invalid and in violation of the terms of § 302 of the Labor Management Relations Act in that they provide for payments by employers. It is also alleged that none of these monies are used or applied for any of the purposes which are permitted under Subsection (c) of § 302.

On March 13, 1961, the plaintiffs were granted leave to file a supplemental complaint, the chief object of which was to bring before the court the fact that since the institution of the action the functions of the three trusts had been transferred to the trustee of a California non-profit corporation, the Southern California Plastering Institute, Inc., organized on February 10, 1961. By the supplemental complaint a second cause of action for declaratory relief was added seeking a declaration that the new trust was invalid (28 U.S.C.A. §§ 2201–2202), and

"that the creation of such defendant non-profit corporation, and the substitution of it in place of the three above mentioned Trusts, does not entitle such non-profit corporation to collect monies from employers, but that such defendant is as fully a representative of employees within the meaning of said Section 302 as were the three Trusts hereinabove mentioned, in that such non-profit defendant corporation is managed, dominated and controlled by directors, not less than half of whom are representatives and agents of the defendant unions who represent the employees of plaintiffs, and the other plastering contractors in the geographical jurisdiction of the defendant unions."

The supplemental complaint also alleged, upon information and belief,

"that it is the intent and purpose of the defendants herein to have the said non-profit defendant corporation to act as trustee in the collection and disbursement of monies from employers in lieu and in place of the three trusts last hereinabove mentioned, without qualifying to act as a trust company under the laws of the State of California to do business as a trustee or as a trust company."

According to the allegations of the supplemental complaint, and as appears clearly from their wording, the articles of incorporation did not designate the members of the corporation but the By-laws, adopted on February 13, 1961, designated eight locals of unions and two corporations representing employers as members. The voting rights of the members are divided as follows: Local 2 of the Operative Plasterers & Cement Masons International Association, A.F.L., 3 directors; Local 194 of the same union, 1 director; Local 400, 1 director; Local 489, 2 directors; Local 343, 1 director; Local 739, 2 directors; Local 838, 1 director; Local 42 of Wood, Wire and Metal Lathers International Union, A.F.L., 1 director; Contracting Plasterers Association of Southern California, 11 directors; Lathing and Metal Furring Contractors Association of California, Inc., 1 director.

This fact is made the subject of an allegation in the complaint that

"under Section 7 of Article III of the By-laws of the number of votes which each member has for the election of directors are set forth, and the defendant unions are given suf-

ficient votes to elect at least half of the directors of such corporation."

The allegations showing the existence of a controversy are in these words:

"That there is a dispute and controversy existing between plaintiffs, on the one hand, and the defendants, on the other hand, in that plaintiffs are claiming that defendant Southern California Plastering Institute, Inc. is an employee representative within the meaning of Section 302 of the Labor-Management Relations Act, and is prohibited from collecting or receiving monies from employers by the provisions of that section, and further, in that such defendant is acting as a trustee and trust company without being qualified or authorized under the laws of the State of California to be a trustee or to act as such trustee. That the defendants herein dispute all of the said contentions of plaintiff as described herein.

"That unless the defendants are restrained and enjoined from collecting monies from plaintiffs for the purposes described in the said collective bargaining agreement and the said three trust agreements, said defendants will continue to collect such monies from plaintiffs and other employers engaged in the plastering industry within the geographical jurisdiction of the defendants unions for such purposes and trusts."

The answers of the defendants to the complaint and the supplemental complaint admitted the main facts, the existence of the original trust agreements and the assumption of their functions by the corporation in the collective bargaining agreement between the employers and the unions. The denials related merely to the validity and legality of the transaction. The answers to the supplemental complaint asserted that

"the Southern California Plastering Institute, Inc. was incorporated for the purposes set forth in said Articles of Incorporation and for the further purpose of creating an entity whose acts, conduct and operations would not lie within the proscriptions of any of the sections of the Labor-Management Relations Act."

Also that the original defendants:

"are not now collecting monies from plaintiffs or other contractors; that the defendant Southern California Plastering, Inc. is the only defendant now authorized to collect money from plaintiffs or other contractors."

No oral testimony was received except some testimony relating to the fact that plaintiff contractors bought plasterboard which was manufactured in Nevada and hardwall plaster containing gypsum which originated in interstate commerce in quantities sufficient to satisfy the minimal requirement of the statute that the employees were "employed in an industry affecting commerce". 29 U.S.C.A. § 186(a) (1) and (2).

While the summaries of the books of the plaintiff contractors relating to work and materials were carefully scrutinized by the defendants, no argument is advanced that the minimal requirement has not been met. None could very well be made. For, the undisputed testimony, as to one company, was that it purchased, from sources outside the State, plasterboard and hardwall plaster of the total value of $158,589.28 during the calendar year 1960–61. During 1959–60 the same concern performed a lathing and plastering contract at Nellis Air Force Base, Nevada, at a total contract price of $255,-280.00, all materials for the job being purchased from sources outside California.

One of the other plaintiffs purchased, in 1960, sacks of hardwall plaster of the value of $50,828.93, and from January 1, 1961 to April 30, 1961, $6,795.07. The same plaintiff purchased, for 1960, plasterboard in the amount of $16,393.85 and for the corresponding four months in 1961, $2,249.09.

Other plaintiffs purchased out of state materials for the past twelve months in the sum of $175,000.00.

In some instances the orders were placed through local material houses, in others, directly through the supplier. In many instances the shipment was made direct from the outside supplier, and delivery being made in carload lots on a spur track on the job, or small quantities at the job or at the plastering contractor's warehouse. As the equipment and material and, perhaps, the employees also moved in interstate commerce, it cannot be seriously contended that interstate commerce was not involved. See, 29 U.S.C.A. § 152(6); National Labor Relations Board v. Fainblatt, 1939, 306 U.S. 601, 604–605, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Relations Board v. Cantrall, 9 Cir., 1953, 201 F.2d 853, 855; National Labor Relations Board v. Stoller, 9 Cir., 1953, 207 F.2d 305, 306–308; National Labor Relations Board v. Daboll, 9 Cir., 1954, 216 F.2d 143, 144; Bianchi v. United States, 8 Cir., 1955, 219 F.2d 182, 190–191.

The corporation was organized, as the Articles of Incorporation state, as a general non-profit corporation under the non-profit corporation law of the State of California. California Corporation Code, § 9000 et seq.

The objects stated in the Articles of Incorporation were these:

(a) To promote industry betterment and industry public relations for the lathing and plastering industry.

(b) To encourage harmony between labor and management within the lathing and plastering industry.

(c) To carry out appropriate programs of public relations for the general welfare and advancement of the lathing and plastering industry.

(d) To gather and distribute facts, data and other information relative to the use and benefits of the lathe and plaster in general for the use and benefit of its members, the lathing and plastering industry as a whole and for public dissemination.

(e) To engage generally in any causes or objects similar to the foregoing in order to promote the lathing and plastering industry.

(f) To adopt By-laws prescribing the duties of the officers and agents of the corporation, the detail of its organization, the time and manner of its meetings, and any and all detail incident to its meetings and conduct and management of its organization.

(g) To do any and all things which a natural person may do necessary or desirable for the general purpose for which the corporation is organized.

These objects are well within the purposes authorized by California law for non-profit corporations. California Corporation Code, § 9200. See, Complete Service Bureau v. San Diego County Medical Society, 1954, 43 Cal.2d 201, 207–208, 272 P.2d 497; Griffiths & Sprague Stevedoring Co., Inc. v. Waterfront Employers Ass'n of Pacific Coast, 9 Cir., 1947, 162 F.2d 1017.

The corporation having a *de facto* existence, its legal existence can only be inquired into by the State of California in relation to its Attorney General, in a *quo warranto* proceeding or under the special California statute which has taken its place. California Corporation Code, § 4690; Madera Railway Co. v. Raymond Granite Co., 1906, 3 Cal.App. 668, 679–680, 87 P. 27; McCann v. Children's Home Society of California, 1917, 176 Cal. 359, 363, 168 P. 355; People v. Merchants' Protective Corp., 1922, 189 Cal. 531, 533–536, 209 P. 363; Westlake Park Investment Co. v. Jordan, 1926, 198 Cal. 609, 618, 246 P. 807; Collins v. Consolidated Water Co. of Pomona, 1932, 122 Cal.App. 348, 349, 9 P.2d 872. And if, as contended, its operations contravene the provisions of California law in that it is engaging in the trust business without authorization for such activity in its Articles of Incorporation (California Financial Code, § 1500) and without authority from the Superintendent of Banks (California Financial Code, §§ 381, 382) and without deposit

of securities with the State Treasurer (California Financial Code, §§ 1540–1547), the State is the only power that can intervene to determine the truth of these allegations and take appropriate action, either by *quo warranto* or other authorized proceedings. California Financial Code, §§ 3111–3132. We cannot usurp that State function under the guise of a declaration of rights.

So we come to the main question, whether the original trusts and the corporation which succeeded them perform functions which are forbidden by the Labor Management Relations Act, as amended in 1959.

## II

### Restriction of Purposes

■ A determination of the question before us requires that we inquire into the scope of the clause, the violation of which is charged here. The clause is an exception to the general provisions of the section, the aim of which is to proscribe the payment by employers and receipt by employee representatives in industries affecting commerce of bribes, gifts and gratuities, and to control monies paid into union trust funds as "war chests" or for other purposes.

After the adoption of the statute (Taft-Hartley) so many variant interpretations, allegedly drawn from its history, were asserted that Judge Learned Hand in a dissent in a noted case, United States v. Ryan, 2 Cir., 1955, 225 F.2d 417, complained that he found "it impossible to extract any safe principles". At page 427. The Supreme Court, 350 U. S. 860, 76 S.Ct. 103, 100 L.Ed. 763, granted certiorari in that case and its decision has become the guide to the meaning of the section, especially insofar as it relates to the prohibition against payment to "representatives" of the union. The entire clause as it stood before the 1959 amendment is printed in the margin.[1]

The important part of the Ryan decision, so far as it concerns this case, is contained in the following statement as to the scope of the exceptions:

"Nor can it be contended that in this legislation Congress was aiming solely at the welfare fund problem. Such a suggestion is supported nei-

1. "(5) with respect to money or other thing of value paid to a trust fund established by such representative for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents); Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the *detailed basis* on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employees groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be *designated in such written agreement;* and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying *such pensions or annuities.*"

ther by the legislative history nor the structure of the section. The arrangement of § 302 is such that the only reference to welfare funds is contained in § 302(c) (5). If Congress intended to deal with that problem alone, it could have done so directly, without writing a broad prohibition in subsection (a) and (b) and *five specific exceptions thereto in subsection (c), only the last of which covers welfare funds.* As the statute reads, it appears to be a criminal provision, *malum prohibitum,* which outlaws all payments, with stated exceptions, between employer and representative." United States v. Ryan, supra, 350 U.S. 299, at page 305, 76 S.Ct. 400, at page 404, 100 L.Ed. 335. (Emphasis added)

As I read this extract it means just this, that subsection (5) is a declaration of the Congress that only welfare funds *coming within one of the five (now six) exceptions* are exempt from the sweep of congressional condemnation. Subsequent decisions of the Supreme Court confirm this view.

In National Labor Relations Board v. Cabot Carbon Co., 1959, 360 U.S. 203, 79 S.Ct. 1015, 3 L.Ed.2d 1175, the high court upheld the ruling of the National Labor Relations Board to the effect that a "committee" of employees which deal with employers was forbidden by the Act, despite the insistence that

"to hold these employee committees to be labor organizations would *prevent employers and employees from discussing matters of mutual interest concerning the employment relationship.*" 360 U.S. at page 218, 79 S.Ct. at page 1024. (Emphasis added)

To this the Court answered:

"The principal distinction lies in the unfettered power of the former to insist upon its requests. Labor Board v. Jas. H. Matthews & Co., 3 Cir., 156 F.2d 706, 708. Whether those proposals and requests by the

Committees, and respondents' consideration of and action upon them, do or do not constitute 'the usual concept of collective bargaining' (256 F.2d [281], at page 285), we think that those activities establish that the Committees were 'dealing with' respondents, with respect to those subjects, within the meaning of § 2(5)." 360 U.S. at page 214, 79 S.Ct. at page 1022.

In Arroyo v. United States, 1959, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915, the majority of the court held that in enacting the section the Congress were concerned with corruption of collective bargaining through bribery of employees representatives by employers and

"with the possible abuse by union officers of the power which they might achieve *if welfare funds were left to their sole control.*" 359 U.S. at page 426, 79 S.Ct. at page 868. (Emphasis added)

I take these statements to mean that the *only* purposes for which joint administrative committees of employers and employees, *working within the framework of the Labor Management Relations Act,* could act were those coming within the exceptions. This interpretation is confirmed by the added statement contained in the opinion:

"Congress believed that if welfare funds were established which did not define with specificity the benefits payable thereunder, a substantial danger existed that such funds might be employed to perpetuate control of union officers, for political purposes, or even for personal gain. See 92 Cong.Rec. 4892–4894, 4899, 5181, 5345–5346; S.Rep. No. 105, 80th Cong., 1st Sess., at 52; 93 Cong.Rec. 4678, 4746–4747. To remove these dangers, specific standards were established to assure *that welfare funds would be established only for purposes which Congress considered proper* and expended only for the purposes for which they were established. See Cox, Some

Aspects of the Labor Management Relations Act, 1947, 61 Harv.L.Rev. 274, 290. *Continuing compliance with these standards in the administration of welfare funds was made explicitly enforceable in federal district courts by civil proceedings under § 302(e)."* 359 U.S. at pages 426–427, 79 S.Ct. at page 868. (Emphasis added) [2]

The conclusion is reenforced by the statement in a later case, Lewis v. Benedict Coal Corp., 1960, 361 U.S. 459, 80 S. Ct. 489, 4 L.Ed.2d 442, which reads:

"The provisions of the collective bargaining agreement creating the fund included the express provision that 'this Fund is an irrevocable trust created pursuant to Section 302(c) of the "Labor-Management Relations Act, 1947." ' Another provision specifies that the purposes of the fund shall be all purposes *'provided for or permitted in Section 302(c).'* In this way the agreement plainly declares what the statute requires, namely, that the fund shall be used 'for the sole and exclusive benefit' of the employees, their families and dependents." 361 U.S. at pages 464–465, 80 S.Ct. at page 493.

All cases interpreting this clause which have arisen since the decision in Ryan, supra, must be read in the light of its declarations and those contained in subsequent cases as to the scope of the limitations on the nature of trust funds. So read they warrant the conclusion that *the only* trust funds permitted are those in the six categories now contained within the exceptions.

In the light of this, the contention of the defendants that the clause under discussion does not prohibit joint administration of trust funds, if they are established for other purposes than dealing with the employers "concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work" (29 U.S.C.A. § 152(5)) cannot be sustained.

Two cases in the Ninth Circuit, Conditioned Air & Refrigeration Co. v. Plumbing and Pipe Fitting Labor-Management Relations Trusts, D.C.Cal.1956, 159 F.Supp. 887, affirmed in 9 Cir., 253 F.2d 427, and Sheet Metal Contractors Association of San Francisco v. Sheet Metal Workers International Association, 9 Cir., 1957, 248 F.2d 307, took cognizance of the decision in Ryan, supra, and applied to the facts before them the broad interpretation of the word "representative". Because the trusts before them palpably concerned themselves with the grievances and other purely union activities defined in 29 U.S.C.A. § 152(5) and which are specifically forbidden by Section 302 of the Act (29 U.S.C.A. § 186)

---

2. The minority, while disagreeing with the disposition of the case, agree with the majority's characterization of the objectives of the section. See, Mr. Justice Tom C. Clark's opinion, Arroyo v. United States, supra at pages 432–433 of 359 U.S., at page 871 of 79 S.Ct. Significantly, he quotes the following statement of the managers of the bill in the Senate:

"'[U]nless we make sure that such [trust] funds, when they are established, *are really trust funds* * * * for the benefit of employees specified in the agreement, there is very grave danger that the funds will be used for the personal gain of union leaders * * *' 93 Cong.Rec. 4678." 359 U.S. at page 432, 79 S.Ct. at page 871.

This accords with the view of Mr. Archibald Cox which is referred to in the majority opinion. Speaking of the proscription imposed on trust funds and their origin, he wrote:

"This provision proscribes multi-employer or industry-wide funds, such as those set up by the UMW and American Federation of Musicians. No one appears ever to have suggested that a properly administered industry-wide fund *presents evils not found in funds confined* to employer units. The ban was first proposed by southern congressmen in 1946 in the interest, if not at the request, of the southern coal operators at a time when the UMW was seeking to establish an industry-wide health and welfare fund. Thus, a specific issue of the kind normally dealt with in collective bargaining was *transferred into the legislative forum for* the benefit of one of the opposing parties." (Op.Cit., p. 291)

the courts in those cases did not reach the question before us. They merely held that particular joint agreements did not come within any of the exceptions stated in subdivision (c) of § 302. To particularize:

In Sheet Metal Contractors Association of San Francisco v. Sheet Metal Workers International Association, supra, the Court said:

"None of the provisions of the joint agreement were such as to bring the payments made to the Joint Industry Board *within any of the exceptions* stated in subdivision (c) of § 302, *the most important* of which permits money to be paid to a trust fund for the exclusive benefit of the employees where such payments are held in trust for the purpose of paying for medical or hospital care, pensions on retirement or death, or compensation for injuries, or illness resulting from occupational activity." 248 F.2d at page 312. (Emphasis added)

Similarly, Judge Gilbert H. Jertberg, then of our court, in Conditioned Air & Refrigeration Co. v. Plumbing and Pipe Fitting Labor Management Relations Trust, supra, came to the conclusion that the chief object of the trust before him was to advance aims which *were not* within the exception:

"The only specific purposes of the Trust are to enforce the collective bargaining agreement and the provisions thereof, covering work within the jurisdiction of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, and to protect *the wages, rates of pay, hours of labor and other conditions of employment of the employees in the plumbing and pipe-fitting industry*. The other stated purposes are vague and uncertain." 159 F.Supp. at page 899. (Emphasis added)

If the teachings of these cases were contrary to the decision of the Supreme Court in Ryan and the subsequent cases which have been alluded to, we would be bound to disregard them. But we are not confronted with that situation. For these cases *did not deal with the problem* which concerns us, namely, whether purposes for which jointly administered trust funds may be organized *are limited* to those contained in the exceptions to the section we are considering. To us it is plain that *they are so limited*.

Some very recent cases decided in the Courts of Appeals interpret the cited Supreme Court decisions on the subject as we do. In Copra v. Suro, 1 Cir., 1956, 236 F.2d 107, we find the following statement as to the scope of the exception clause:

"Subsection (c) provides *five exceptions*, the last of which is for money paid to a welfare trust fund for the exclusive benefit of employees and their families (including a joint fund for the employees of several employers), provided that the trust fund meets certain tests." 236 F. 2d at page 113. (Emphasis added)

In Employing Plasterers' Association of Chicago v. Journeymen Plasterers' Protective and Benevolent Society of Chicago, 7 Cir., 1960, 279 F.2d 92, we find the following as to the scope of the clause:

"Section 302 is aimed *primarily at the prevention of possible abuse* and not at providing a remedy for abuse actually perpetrated. To that end the section declares that the payment and acceptance of employer contributions to employee welfare funds between employers and 'representatives' of employees, respectively, shall be unlawful *unless certain safeguards* are observed in the administration of the welfare funds. Section 302(e) provides the civil remedy of injunction to restrain violations of the section; that is, to restrain payment or acceptance of employer contributions to welfare funds that do not meet the statutory safeguards in their administration.

Where it is established that payment and acceptance is between employer and 'representatives' of employees, *the issue in a suit for injunction becomes the legality of the welfare funds as measured by the statutory standards of administration."* 279 F.2d at page 97. (Emphasis added)

In Mechanical Contractors Association of Philadelphia v. Local Union 420, 3 Cir., 1959, 265 F.2d 607, it was contended, *as it is contended here,* that

"it is not the mere fact of joint administration which runs afoul of Section 302 but the character of the functions performed by the joint administrators." 265 F.2d at page 611.

Rejecting this contention the Court said:

"In light of the Ryan case, strained interpretations intended to limit the Act's operations are to be avoided. Thus, the essence of Section 302 may be summarized as follows: No fund derived from employer contributions may be administered by persons designated by a union *unless the fund meets the standards set forth in Section 302 (c) (5). Any employee-designee administering such fund not meeting the requirements of Section 302(c) (5) is a 'representative' within the meaning of Subsections 302(a) and (b).* As was stated in United States v. Ryan, 350 U.S. at page 305, 76 S.Ct. at page 404, 'if "representative" means only the "exclusive bargaining representative," the explicit limitations on welfare funds in § 302(c) (5) may be easily evaded. Payments made directly to union officials, *or to other individuals as trustees,* would apparently be excluded from § 302. Thus, a narrow construction would frustrate the primary intent of Congress.' (Emphasis supplied) Careful reading of the Sheet Metal and Conditioned Air cases convinces us that rather than supporting appellant's thesis, they are in substantial accord with

the principle set forth herein. Further support for this proposition is contained in our earlier case of United Marine Division, ILA, Local 333, A. F. L. v. Essex Transportation Co., 3 Cir., 1954, 216 F.2d 410, 412, where we held that 'They [the Congress] were forbidding money to be paid to representatives of unions unless *through a trust fund, the requirements for which were set up in some detail [i. e., under § 302(c) (5)].'* This conclusion we feel is inescapable from the structure and wording of the section. As was stated by Judge Hand in his dissenting opinion in United States v. Ryan, 2 Cir., 1955, 225 F.2d 417, 425, subsequently adopted by the Supreme Court, *'Since * * * the purpose of subsection (c) is to state exceptions to the preceding subsections (a) and (b), the payments that subsection (c) covers would fall within (a) and (b) except for the exception.'* 265 F.2d at page 611. (Emphasis added)

This interpretation is aided by the fact that the Congress, in 1959 (73 Stat. 537) added a new category to the exceptions, reading:

"(6) with respect to money or other things of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: Provided, That the requirements of clause (B) of the proviso of clause (5) of this subsection shall apply to such trust funds." 29 U.S.C.A. § 186(c) (6).

Certainly the matter of apprenticeship, vacations, holidays and the like covered by this proviso were not so clearly related to the proscribed practices so as to require a specific enactment of the Congress exempting them. And yet, because certain courts had held that trust funds for apprenticeship purposes were forbidden, the Congress acted and, for good measure, added other exempt cat-

egories. Under this enactment injunctive relief was refused against a trust agreement between an employers' association and a union establishing a joint fund for the training of apprentices and the improvement of the skills of journeymen, supported by the contributions of the employer members. South Louisiana Chapter, Inc., National Electrical Contractors Association v. Local Union No. 130 of the International Brotherhood of Electrical Workers, D.C.E.D.La.1959, 177 F.Supp. 432. So doing the court defined the scope of Section 302, as amended, in this manner:

> "The legislative history of Section 302 makes clear that Congress had in mind, in addition to the protection of welfare funds, outlawing payment of bribes by management to representatives of employees, and extortion of employers by such representatives. See 93 Cong.Rec. 3562–66, 4746–8. See also 10 Stanford L.Rev. 374. In seeking to apply the language of Section 302 literally, this legislative purpose was disregarded in the cases on which plaintiff relies, particularly in Mechanical Contractors, supra. Congress, therefore has been required to spell out its intent in order that courts will not strike down, as illegal, *labor and management-agreements, such as the one in suit, which promote harmony in an industry and redound to the benefit of the employer and employee alike.* Congress, in the Labor Management

Reform Act of 1959, has now made clear what these cases have misconstrued in the Labor Management Relations Act of 1947. *Congress has now specifically exempted from the operation of Section 302 labor-management agreements which would set up a trust fund for the training of apprentices,* § 505, Labor Management Relations Act of 1959, 29 U.S.C.A. § 186(a–c)." 177 F.Supp. at pages 436, 437. (Emphasis added) [3]

That these decisions interpret correctly the purpose of § 302 and of the exceptions, is evidenced by the following quotation from the House Report on the 1959 amendment to the Section:

> "The committee bill contains an amendment to Section 302 of the Labor Management Relations Act, which makes it clear that defraying the costs of apprenticeship or other training programs *is a permissible object* of a joint trust fund to which an employer makes contribution.
>
> "The original drafting of section 302 has created similar legal problems with respect to pooled vacation, holiday, severance, or similar benefits. The amendment of section 302 of the Labor Management Relations Act of 1947, as amended, as proposed in the committee bill would include *those items as permissible* objects of such joint trust funds." House Report No. 741, 1959 U.S.Cong. and Adm. News, pp. 2445–2446. (Emphasis added)

---

3. See, Minkoff v. Scranton Frocks, Inc., D.C.S.D.N.Y.1960, 181 F.Supp. 542, affirmed, 2 Cir., 279 F.2d 115, where the scope of § 302 is stated in this manner:

"Section 302 makes it illegal for an employer to give money to any representative of his employees (subdivision a), and makes it illegal for any representative to receive any money from an employer (subdivision b). These provisions were aimed at preventing the creation of union slush funds and racketeering activities by a union or its representatives. See United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335; 59 Columbia Law Rev. 96 (1959). However, *these prohibitions do not apply to any money paid to a trust fund for the benefit of employees, such as Health and Welfare Funds or Retirement Funds* (subdivision c(5)). In passing it should be pointed out that the section *exempts* from the taint of illegality payments made pursuant to an award of an arbitrator (subdivision c(2)), but such exemption cannot be conclusive against a showing that the award contemplates an act clearly within the prohibition of the statute." 181 F.Supp. at pages 547–548 (Emphasis added)

In explaining the meaning of the 1959 amendments the Report justly stresses the fact that the Congress added more

"*items as permissible objects of such joint trusts.*" [4]

Perhaps Mr. Archibald Cox was right in saying of the restrictions imposed on trust funds:

"The provisions dealing with employer contributions to union trust funds *set the employer up as watchdog, although it has no interest in the fund.* \* \* \*

"The Taft-Hartley Act, however, is the first instance in which the legislative process has been used to settle in favor of one side or the other specific questions—such as the union shop and *trust fund issues*—which were theretofore left to collective bargaining and the play of economic forces." (Archibald Cox, Some Aspects of the Labor Management Relations Act, 1948, 61 Harv.L.Rev. 274, 314)

The philosophy of the Wagner Act allowed unfettered interplay between management and labor. But the Congress, beginning with the Taft-Hartley Act and ending with the 1959 amendments to the Labor Management Relations Act, adopted a different approach. This they expressed by proscribing certain practices and permitting others in labor-management agreements, and *permitting joint trust funds for certain purposes only.*

■ Granted that representatives of labor and management could legally associate themselves in corporate entities for such purposes under state law, they must accept the federal restriction of these purposes, *if they seek to apply them to collective bargaining agreements,* which come under the exclusive jurisdiction of federal law.[5] Ours is the duty to apply them.

■ Declaration will, therefore, be for the plaintiff, limited to the grounds stated in this opinion, and injunction. However, because of the novelty of the problem and the irreparable damage which would be suffered by the defendants if they were forthwith deprived of the right to receive monies for the fund and further administer it, the court, in the exercise of its inherent power, will stay execution and enforcement of the injunction until the judgment shall have become final, after appeal.[6]

4. This was also the view of the managers of the bill in the Senate, as appears from their statement quoted in the minority opinion in Arroyo v. United States, supra, and in our Note 2.

5. See, Barbot v. Frackman, D.C.S.D.N.Y. 1961, 191 F.Supp. 171, 173; United States v. Alaimo, D.C.M.D.Pa.1961, 191 F.Supp. 625, 627–628. The conclusion reached makes it unnecessary to consider the alleged differences between the voting and other powers of the directors of the corporation and those of the trustees in the former trusts. These differences do not affect the purpose, *which we find to contravene the statute, when used to implement a collective bargaining agreement.*

In this connection, the defendants' confident reliance on the statement of the Court of Appeals for the Third Circuit that because payment is made to a fund and the trustees "have fiduciary duties in connection therewith as to any other trustees" they "are not acting as representatives of either union or employ-ers" (United Marine Division v. Essex Transportation Co., 3 Cir., 1954, 216 F. 2d 410, 412) is misplaced. The reasons are these: The opinion preceded Ryan. It is modified by that Court's later post-Ryan decision. Mechanical Contractors Association of Philadelphia, Inc. v. Local Union 420, 3 Cir., 1959, 265 F.2d 607, 611. More, *it is disapproved,* by the Court of Appeals for the Ninth Circuit in Sheet Metal Contractors Association of San Francisco v. Sheet Metal Workers International Association, 9 Cir., 1957, 248 F.2d 307, at page 315.

6. See, Hovey v. McDonald, 1883, 109 U.S. 150, 161, 3 S.Ct. 136, 27 L.Ed. 888; Champlin Refining Co. v. Corporation Commission of State of Oklahoma, 1932, 286 U.S. 210, 239, 52 S.Ct. 559, 76 L. Ed. 1062; Central Kentucky Natural Gas Co. v. Railroad Commission of Kentucky, 1933, 290 U.S. 264, 271, 54 S.Ct. 154, 78 L.Ed. 307; Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Co., 1960, 363 U.S. 528, 531–532, 80 S.Ct. 1326, 4 L.Ed.2d 1379;

*The findings and judgment, containing additional facts, are printed below as Appendix "A."*

### Appendix "A"

### Findings of Fact

The above-entitled action came on regularly for trial on Tuesday, May 23, 1961, before the Honorable Leon R. Yankwich, Judge Presiding, a jury trial having been expressly waived, plaintiffs above-named appearing by James A. McLaughlin, of the firm of McLaughlin & Casey, and by Earl Klein, their attorneys, defendants The Contracting Plasterers' Association of Southern California, Inc., a corporation, C. A. Reischel, James C. Peacock, J. R. Cruz, Paul Calcaterra, and E. D. Carthey appearing by Lewis C. Teegarden, of the firm of Mantalica, Barclay & Teegarden, and defendants Local No. 2 of the Operative Plasterers and Cement Masons International Association, an unincorporated voluntary association, Local No. 194 of the Operative Plasterers and Cement Masons International Association, an unincorporated voluntary association, Local No. 343 of the Operative Plasterers and Cement Masons International Association, an unincorporated voluntary association, Local No. 400 of the Operative Plasterers and Cement Masons International Association, an unincorporated voluntary association, Local No. 489 of the Operative Plasterers and Cement Masons International Association, an unincorporated voluntary association, Local No. 739 of the Operative Plasterers and Cement Masons International Association, an unincorporated voluntary association, Local No. 838 of the Operative Plasterers and Cement Masons International Association, an unincorporated voluntary association, Operative Plasterers and Cement Masons International Association, an unincorporated voluntary association, Ray Carter, Reuben R. Partin, A. H. Gallardo, Al Lethbridge, Ray Baker, George Cole, Elmer Croshaw, Al Seay, Eugene D. Ferguson and Hugh L. Sosbee, appearing by Eugene Miller, of the firm of Brundage, Neyhart, Grodin & Miller, their attorneys, and oral and documentary evidence having been introduced on behalf of the parties, stipulations having been entered into during the trial, and the Court having dismissed the said action as to defendants E. D. Carthey and J. R. Cruz during the trial pursuant to stipulation of the parties, and the parties having theretofore having signed and filed a dismissal in writing with respect to all defendants sued herein under fictitious names, and the trial of the case having been completed on the 23rd day of May, 1961, and the Court having considered the case and being fully advised makes the following findings of fact:

#### I

Plaintiffs Paramount Plastering, Inc., Keith Garrick, Inc., Doyle Plastering Co., Inc., Johnson & Fisher Plastering Contractors, Inc., Dave's Plastering Company, Inc., and M. J. Russo, Inc., are now and have been at all times hereinafter mentioned corporations organized and existing under the laws of the State of California; that all of said plaintiffs, except Johnson & Fisher Plastering Contractors, Inc. have their principal offices and places of business in the County of Los Angeles, State of California; and that Johnson & Fisher Plastering Contractors, Inc. is now and at all times hereinafter mentioned has been a corporation having its principal office and place of business in the County of Orange, State of California.

#### II

Plaintiffs W. G. Brandt and G. Brandt are now and have been at all times hereinafter mentioned co-partners doing business under the fictitious name and style of Triple G Plastering. That on or about the 25th day of April, 1958, said last named plaintiffs duly caused to be pub-

Tulare Irrigation District v. Superior Court, 1925, 197 Cal. 649, 660–665, 242 P. 725; City of San Diego v. Southern

California Telephone Corp., 1954, 42 Cal. 2d 110, 120, 266 P.2d 14.

lished and filed in the office of the County Clerk of Los Angeles County a certificate of fictitious name under and pursuant to the provisions of Sections 2466 to 2470, inclusive, of the Civil Code of the State of California, wherein and whereby said last named plaintiffs stated that they were doing business under the fictitious name of Triple G Plastering, and stated their respective places of residence. That the said certificate was published once a week for four successive weeks in a newspaper published in Los Angeles County, and an affidavit showing such publication was duly filed with the said County Clerk within thirty days after the completion of such publication.

### III

Plaintiffs A. Rowland Maniord and Merle J. Carll are now and have been at all times hereinafter mentioned residing in the County of Los Angeles, State of California.

### IV

Defendants Local No. 2 of the Operative Plasterers and Cement Masons International Association, Local No. 194 of the Operative Plasterers and Cement Masons International Association, Local No. 343 of the Operative Plasterers and Cement Masons International Association, Local No. 400 of the Operative Plasterers and Cement Masons International Association, Local No. 489 of the Operative Plasterers and Cement Masons International Association, Local No. 739 of the Operative Plasterers and Cement Masons International Association, Local No. 838 of the Operative Plasterers and Cement Masons International Association, and Operative Plasterers and Cement Masons International Association, are now and have been at all times hereinafter mentioned, unincorporated voluntary associations functioning as labor organizations, and members and affiliates of the American Federation of Labor-Congress of Industrial Organization, a national labor organization. All of the hereinabove named defendants will hereinafter be referred to as "defendant unions". That the territorial jurisdiction of defendant unions, with the exception of defendants Operative Plasterers and Cement Masons International Association and Local No. 489 of the Operative Plasterers and Cement Masons International Association, includes the territory within the boundaries of the County of Los Angeles, State of California. That the territorial jurisdiction of defendant Local No. 489 of the Operative Plasterers and Cement Masons International Association, includes the territory within the boundaries of the County of Orange, State of California.

### V

Defendant The Contracting Plasterers' Association of Southern California, Inc., is now and has been at all times hereinafter mentioned a non-profit corporation organized and existing under the laws of the State of California, and having its principal office and place of business in the County of Los Angeles, State of California. That the members of such defendant corporation are now and have been at all times herein mentioned individuals, firms and concerns engaged in the business of acting as contracting plasterers within the geographical jurisdiction of the defendant unions hereinabove described.

### VI

That the defendants Ray Carter, Reuben R. Partin, A. H. Gallardo, Al Lethbridge, Ray Baker, George Cole, Elmer Croshaw, Al Seay, Eugene D. Ferguson and Hugh L. Sosbee, were at all times up to a date on or about the 13th day of February, 1961 trustees of the trusts hereinafter described, and were at all such times residing within the geographical jurisdiction of the above-entitled court. That all of the above named said trustees were appointed and selected as such trustees by the defendant unions herein.

That the defendants, C. A. Reischel, James C. Peacock and Paul Calcaterra, were at all times up to a date on or about the 13th day of February, 1961 trustees of the trusts hereinafter described, and were at all such times residing within the

geographical jurisdiction of the above entitled court. That all of the above named said trustees were appointed and selected as such trustees by defendant The Contracting Plasterers' Association of Southern California, Inc., for and in behalf of its members.

### VII

Jurisdiction of this action is conferred upon the above-entitled court by the provisions of subdivision (c) of Section 302 of the Labor Management Relations Act of 1947, as amended in 1959. 29 U.S. C.A. § 186(c) (5).

### VIII

Plaintiffs are now and have been at all times herein mentioned, contracting plasterers engaged in the lathing and plastering business in the State of California, and in the business of furnishing labor and materials for the purpose of constructing and installing lath and plaster on buildings and structures in the State of California.

### IX

That on or about the month of June, 1959, plaintiffs Paramount Plastering, Inc., Doyle Plastering Co., Inc., Johnson & Fisher Plastering Contractors, Inc., M. J. Russo, Inc., and Merle J. Carll, signed and entered into agreements in writing with the defendant unions. That photostatic copies of the agreements which said plaintiffs signed are attached to plaintiffs' original complaint on file herein and marked Exhibit 1, and reference is made to such photostatic copies herein. That except for the fact that each of the plaintiffs signed a separate agreement and for the difference in signatures resulting from the name of the business representative so signing and the name of the particular plaintiff so signing, all of the said collective bargaining agreements are identical in form and substance.

That each of said agreements specified and provided that plaintiffs shall abide by any amendments or modifications to another collective bargaining agreement which is therein referred to as being dated January 2, 1958, and said agreements also specified that plaintiffs should abide by any new agreement which might thereafter be entered into between the defendant The Contracting Plasterers' Association of Southern California, Inc., and the defendant unions.

### X

That following the signing of the agreements described under the preceding paragraph hereinabove, and prior to the filing of the above-entitled action, The Contracting Plasterers' Association of Southern California, Inc. and the defendant unions signed and entered into a collective bargaining agreement in writing. That a true copy of such collective bargaining agreement is attached to plaintiffs' complaint on file herein, and reference is made to such document.

### XI

That between the dates of November 1, 1959 and January 1, 1960, plaintiffs Paramount Plastering, Inc., Johnson & Fisher Plastering Contractors, Inc. and Dave's Plastering Company, Inc., also signed counterparts of the said agreement, a copy of which is attached to plaintiffs' complaint on file herein and marked Exhibit 2, and reference is made to such document.

### XII

That under and pursuant to the provisions of subparagraphs B, C, and E of Article VI of the collective bargaining agreement, (Exhibit 2) it was specified and provided as follows:

"B.   Southern California Plastering Institute Industry Program

"1.   The Trust Agreement of the Southern California Plastering Institute Industry Program, as amended and modified, is a part hereof as though fully set forth herein.

"2.   The Contractors covered by this Agreement, in addition to compliance with all other provisions contained herein, shall pay to the Southern California Plastering Institute Industry Program, or its order, the sum of Four and Three-Fourths

Cents (4¾¢) for each hour a man is to receive pay pursuant to the terms of this contract.

"3. The Southern California Plastering Institute Industry Program may require payments to be made directly to it or may designate by written order an agent for deposit or collection. In the event no such agent or depository is named, said sums shall be paid to the Southern California Plastering Institute Trust for the benefit of the Southern California Plastering Institute Industry Program.

"C. Southern California Plastering Institute Trust

"1. The Southern California Plastering Institute Trust, herein referred to as the Institute Trust, shall continue in existence for the purpose of collecting such sums as are due the various Trusts which are part of this Agreement, and to pay over to said Trust such sums as are collected. The Trust Agreement of the Southern California Plastering Institute Trust, as amended and modified, is made a part hereof as though fully set forth herein.

"E. Labor-Management Relations Trust

"1. The Trust Agreement of the Labor-Management Relations Trust is made a part hereof as though fully set forth herein.

"2. The Contractors covered by this Agreement, in addition to compliance with all other provisions contained herein, shall pay to the Labor-Management Relations Trust, or its order, the sum of One-Fourth Cent (¼¢) for each hour a man is to receive pay.

"3. The Labor-Management Relations Trust may require payments to be made directly to it or may designate by written order an agent for deposit or collection. In the event no such agent or depository is named, said sums shall be paid to the South-

ern California Plastering Institute Trust for the benefit of the Labor-Management Relations Trust."

That the three trusts hereinabove referred to were embodied in three separate trust agreements all of which were printed in a booklet, a copy of which is attached to plaintiffs' complaint on file herein and marked Exhibit 3, and reference is made to such document. The trust designated as "Southern California Plastering Institute Industry Program" is set forth on pages 17 to 25 of such Exhibit 3. The trust designated as "Southern California Plastering Institute Trust" is set forth on pages 1 to 5, inclusive, of such Exhibit 3, and the trust designated as "Labor-Management Relations Trust" is set forth on pages 26 to 32 of such Exhibit 3.

### XIII

That each of the three above described trust agreements specify and provide that the employers and the employees shall be equally represented in the administration of such trusts through a Board of Trustees, one-half of whom shall be appointed by the employers through their agency the California Plastering Association of Southern California, Inc., and the other one-half of whom shall be appointed by the defendant unions. That the trust known and designated as the Southern California Plastering Institute Trust was maintained for the purpose of collecting contributions from plastering employers who were parties to the above mentioned collective bargaining agreements, and thereafter distributing and disbursing such monies to the other trusts referred to in the collective bargaining agreement, copy of which is attached to plaintiffs' complaint and marked Exhibit 2. That such trust agreement also authorized the trustees of such trust to pay out of the trust monies so collected, any other expenses incidental to the establishment and administration of such trust.

That the trust known and designated as the Southern California Plastering Institute Industry Program Trust was

formed and maintained, among other things, for the purpose of selecting and carrying out a program of public relations for the general welfare and advancement of the plastering industry.

That the trust known and designated as the Labor-Management Relations Trust was formed and maintained for the purpose of expending funds for the common interest of labor-management relations of the parties to the above-mentioned collective bargaining agreements.

That none of the three above-described trusts were formed or maintained for any of the purposes permitted under Subsection (c) of Section 302 of the Labor-Management Relations Act of 1947, as amended in 1959. That all three of the said trusts were for purposes other than those permitted and described under Section 302(c) (5) of the above-mentioned Act. That all of the said trusts have at all times been maintained from the contributions made by the employers who were parties to the collective bargaining agreements hereinabove described, and under and pursuant to the terms and provisions of such collective bargaining agreements requiring such contributions.

### XIV

On the 10th day of February, 1961, the defendants herein caused defendant Southern California Plastering Institute, Inc. to be incorporated under the laws of the State of California relating to non-profit corporations, and that a true copy of the Articles of Incorporation of such corporation, which are on file with the Secretary of State of California is attached to plaintiffs' supplemental complaint on file herein and marked Exhibit 1, and reference is made to such document.

That the union and employee appointed trustees to the above described trusts who were appointed and designated by the defendant unions as Directors of said last named corporation are Ray Baker, George Cole, Elmer Croshaw, Sam F. Duffield, Eugene D. Ferguson, A. H. Gallardo, Al Lethbridge, Reuben R. Partin,

Albert Seay and Hugh L. Sosbee. That the Directors of such corporation who were also designated by plastering employers as trustees under the three above described trusts are Clay M. Johnston, Robert W. Bolster, Paul Calcaterra, William L. Martin, James C. Peacock, C. A. Reischel and J. Carroll Duncan.

That in addition to the above named parties, George W. Glanders and Euel E. Petty were designated as Directors of such corporation by the defendant unions, and Paul Reimer, Ralph F. Jones, Victor A. Case, Reginald Hayword and Ray Arce were designated as Directors of such corporation by the plastering employers who were parties to the above described collective bargaining agreements.

### XV

That at or about the time of the incorporation of the corporation described under the preceding paragraph herein, such corporation duly adopted its By-Laws, and under Article II of said By-Laws, it specified who the members of such corporation would be as follows:

"The members of this Corporation shall consist of the following Local Unions and Contractors Associations:

"Local 2 of the Operative Plasterers and Cement Masons International Association, A.F.L.;

"Local 194 of the Operative Plasterers and Cement Masons International Association, A.F.L.;

"Local 400; Local 489; Local 343; Local 739; Local 838;

"Local 42 of Wood, Wire and Metal Lathers International Union, A. F.L.;

"Contracting Plasterers Association of Southern California;

"Lathing and Metal Furring Contractors Association of California, Inc."

That Section 7 of Article III of the By-Laws specified the number of votes that each of such members should have in connection with the election of Direc-

tors of the said corporation, and the language of said Section 7 is as follows:

"(a) Each member of the corporation shall be entitled to elect the number of directors set opposite their names as follows:

| | |
|---|---|
| Local 2 of the Operative Plasterers and Cement Masons International Association, A.F.L.: | 3 Directors. |
| Local 194 of the same union | 1 Director. |
| Local 400 | 1 Director. |
| Local 489 | 2 Directors. |
| Local 343 | 1 Director. |
| Local 739 | 2 Directors. |
| Local 838 | 1 Director. |
| Local 42 of Wood, Wire and Metal Lathers International Union, A.F.L.: | 1 Director. |
| Contracting Plasterers Association of Southern California: | 11 Directors. |
| Lathing and Metal Furring Contractors Association of California, Inc.: | 1 Director |

"(b) The Directors elected by the Contracting Plasterers Association of Southern California must be individuals actively engaged in the plastering contracting business in Los Angeles or Orange Counties.

"The Directors elected by the Lathing and Metal Furring Association of California, Inc., must be individuals actively engaged in the lathing contracting business in Los Angeles or Orange Counties. In the event the Lathing and Metal Furring Contractors Association fails to exercise the privilege of electing a Director, that Director shall be elected by the Contracting Plasterers Association of Southern California, and must be a person actively engaged in the lathing contracting business in Los Angeles or Orange Counties."

That Section 1 of Article IV of the said By-Laws provided as follows:

"Subject to the limitation of the Articles of Incorporation, of the By-Laws, and of the laws of the State of California, all corporate powers shall be exercised by or under the authority of a Board of Directors."

XVI

That the purposes for which the last above described corporation was formed are described in its Articles of Incorporation as follows:

"The purposes for which this corporation is formed are:

"(a) To promote industry betterment and industry public relations for the lathing and plastering industry.

"(b) To encourage harmony between labor and management within the lathing and plastering industry.

"(c) To carry out appropriate programs of public relations for the general welfare and advancement of the lathing and plastering industry.

"(d) To gather and distribute facts, data and other information relative to the use and benefits of lath and plaster in general for the use and benefit of its members, the lathing and plastering industry as a whole and for public dissemination.

"(e) To engage generally in any causes or objects similar to the foregoing in order to promote the lathing and plastering industry.

"(f) To adopt By-Laws prescribing the duties of the officers and agents of the corporation, the detail of its organization, the time and manner of its meetings, and any and all detail incident to its meetings and conduct and management of its organization.

"(g) To do any and all things which a natural person may do necessary or desirable for the general purpose for which the corporation is organized."

That in addition to the foregoing purposes, it was specified under Article III of such Articles of Incorporation that it had been organized pursuant to Part 1 of Di-

vision 3 of Title 1 of the California Corporations Code as a non-profit corporation, and under Article V of the said Articles of Incorporation, it was specifically provided as follows:

"The specific and primary purposes of this corporation are for the promotion of the use of lath and plaster and for promoting harmonious relations between management and labor in the lathing and plastering industry in Southern California."

That the said Articles of Incorporation further provided that there should be twenty-four Directors of such corporation.

## XVII

That on or about the 13th day of February, 1961, the defendant, The Contracting Plasterers' Association of Southern California, Inc., acting for and in behalf of the contracting plastering employers within the geographical jurisdiction of the defendant unions, entered into an agreement in writing with the defendant unions wherein and whereby the collective bargaining agreement, which is attached to plaintiffs' original complaint and marked Exhibit 2, was amended, and that a true copy of such agreement in writing so amending such collective bargaining agreement is attached to plaintiffs' supplemental complaint on file herein and marked Exhibit 2, and reference is made to such document for further particulars.

That under and by virtue of such amended agreement, the parties thereto substituted the defendant Southern California Plastering Institute, Inc. in lieu of the trust hereinabove described which was known and designated as Southern California Plastering Institute Industry Program, so as to enable the contributions which the collective bargaining agreement had theretofore required to be made to the three trusts hereinabove described to be made to the defendant Southern California Plastering Institute, Inc. That the specific manner in which

such changes were accomplished by such amendatory agreement are as follows:

"(1) Article III(J) 2(6) c was amended so as to substitute the name of defendant Southern California Plastering Institute, Inc. in lieu and in place of the name Southern California Plastering Institute Industry Program, and to thereby provide that income received by the Joint Conference Board on account of any cash bonds deposited with it, pursuant to the terms of Article III, should be paid to defendant Southern California Plastering Institute, Inc. in lieu and in place of Southern California Plastering Institute Industry Program.

"(2) Article III(J) 2(11) was amended so as to substitute Southern California Plastering Institute, Inc. in lieu and in place of Southern California Plastering Institute Industry Program, and to thereby provide for the distribution of income received by the Joint Conference Board, or any trustee acting in its behalf, to Southern California Plastering Institute, Inc. in place of Southern California Plastering Institute Industry Program.

"(3) Article V(c) 5 was amended so as to substitute the name Southern California Plastering Institute, Inc. in lieu of Southern California Plastering Institute Program, and to thereby provide that plaintiffs and all plastering employers should pay the differential of twenty-five cents per hour therein referred to, to defendant Southern California Plastering Institute, Inc.

"(4) The first paragraph under Article VI was amended by striking out the name Southern California Plastering Institute Industry Program and eliminating such Program from the provisions of Article VI, and the substitution of defendant Southern California Plastering Institute, Inc. in lieu and in place of

Southern California Institute Industry Program.

"(5) Article VI(B) 1 was amended so as to make it read and provide that 'The Articles of Incorporation and By-laws of Southern California Plastering Institute, Inc. is made a part hereof as though fully set forth herein.'

"(6) Article VI(B) 2 was amended so as to provide for the payment by plaintiffs and all other plastering employers within the geographical jurisdiction of any of the defendant unions to defendant Southern California Plastering Institute, Inc. of the sum of five cents per hour for each hours work by any plasterer, and to provide that such payments shall be made at such time and place as the Board of Directors of defendant Southern California Plastering Institute, Inc. shall designate.

"(7) Article VI(B) 3 was amended so as to provide that defendant Southern California Plastering Institute, Inc. may require payments to be made directly to it or may designate by written order an agent for the deposit or collection of such payments.

"(8) Article VI(C) 1 was amended so as to provide that Southern California Plastering Institute Trust should continue to exist for the purpose of collecting such sums as are due 'the various Trusts', except those payments which were required under Article VI(B) 2 to be made directly to Southern California Plastering Institute, Inc. That under the said collective bargaining agreement, prior to such amendments, and under the terms and provisions of the trust agreement relating to Southern California Plastering Institute Trust, such last mentioned Trust had theretofore acted as the agency and trustee for collecting the monies from plastering employers which were being paid to all of the Trusts described under the trust agreement,

copy of which is attached to plaintiffs' original complaint on file herein and marked Exhibit 3.

"(9) Article VI(E), relating to the Labor-Management Relations Trust, was stricken out entirely, thereby eliminating any reference in the collective bargaining agreement to such Trust.

"(10) Article VI(G) was amended by adding to the paragraph therein contained the following language: 'This section shall not be applicable to the Articles of Incorporation and By-laws of the Southern California Institute, Inc.' "

### XVIII

That the defendants herein, by creating defendant Southern California Plastering Institute, Inc. and making the amendments in the collective bargaining agreement as hereinabove described, intended to circumvent the prohibitions contained in Section 302 of the Labor-Management Relations Act (Section 186, Title 29 U.S.C.A.) which prohibit the payment by employers of any monies to any representative of employees, and the collection by any representative of employees from an employer of any monies, except as specifically provided under subsection (c) of Section 302, by substituting a non-profit corporation as the entity authorized to collect the monies from the employers for the purposes contemplated and specified under the three Trusts which are designated in the collective bargaining agreement as Southern California Plastering Institute Trust, Southern California Plastering Institute Industry Program Trust, and Labor-Management Relations Trust, the trust agreements as to which are respectively set forth on pages 1 to 6, pages 17 to 26, and pages 26 to 33 of the trust agreement, copy of which is attached to plaintiffs' original complaint and marked Exhibit 3.

### XIX

There has been a dispute and controversy between plaintiffs, on the one hand, and the defendants on the other hand,

respecting whether the collection by the three trusts hereinabove described of monies from the employers hereinabove mentioned, and the payment by such employers to such trusts constituted a violation of Section 302 of the Labor-Management Relations Act as amended in 1959, and as to whether or not such trusts could lawfully function and exist and collect and receive monies from employers for the uses and purposes for which such trusts were formed.

That since the incorporation of defendant Southern California Plastering Institute, Inc., there has been a dispute and controversy between plaintiffs, on the one hand, and the defendants on the other hand, respecting whether the collection by the said corporation of monies from the employers hereinabove mentioned, and the payment by such employers to said corporation constituted a violation of Section 302 of the Labor-Management Relations Act as amended in 1959, and as to whether or not such corporation could collect and receive monies from employers for the uses and purposes for which such corporation was formed.

That insofar as the right of such corporation to function and exist in the State of California is concerned, plaintiffs have no right to question its right or power to function as a non-profit corporation under the laws of the State of California, but plaintiffs do have the right to question by this proceeding the right of such corporation to collect and receive contributions from the employers hereinabove described, and to use such contributions for any of the purposes hereinabove described.

## XX

That the businesses of the plaintiffs affect interstate commerce in the United States of America in that each of the plaintiffs regularly purchases large quantities of lath and plastering materials which are produced outside the State of California, and which are shipped on some occasions directly to plaintiffs' building sites in California, and on other occasions are shipped to dealers and wholesalers within the State of California through whom plaintiffs have purchased such materials, and which are thereafter delivered by such dealers and wholesalers to building sites of plaintiffs.

That plaintiff Keith Garrick, Inc. purchased from sources outside the state, plaster board and hardwall plaster of a total value of $158,589.28 during the calendar year of 1960–1961. That during the calendar year of 1959–1960, the same plaintiff performed a lathing and plastering contract and did the lathing and plastering work at Nellis Air Force Base in the State of Nevada, and the total contract price paid to Keith Garrick, Inc. for such work was the sum of $255,280. That all of the materials which went into the job at the said site were procured and purchased from sources outside the State of California.

That plaintiff M. J. Russo, during the year of 1960, purchased hardwall plaster at a price of $50,828.93 which was produced outside the State of California, and from January 1, 1961 to April 30, 1961, purchased an additional amount of such hardwall plaster at a price of $6,795.07. That such plaintiff also, during the year of 1960, purchased plaster board which was produced outside the State of California at a total price of $16,393.85, and during the first four months of 1961 purchased additional quantities of such plaster board for a total purchase price of $2,249.09.

That other plaintiffs purchased and had delivered into the State of California for use in the State of California, materials as above described at a total price in excess of $175,000.

That in some instances the orders by the various plaintiffs for the said materials were placed through local wholesalers and suppliers, and in other instances they were purchased directly from the producer outside the State of California, and that such materials, after being produced outside the State of California, were customarily shipped in car-

load lots by rail into the State of California.

### Conclusions of Law

From the foregoing Findings of Fact, the court hereby concludes, and as a matter of law, hereby decides:

1. That none of the purposes for which the three trusts hereinabove described or Southern California Plastering Institute, Inc. have been maintained and created come within the exceptions which are specified under Section 302(c) (5) of the Labor-Management Relations Act as amended in 1959. That none of such trusts nor such corporation are now or have been operating any trust fund established for the sole and exclusive benefit of employees of any employer, or the families or dependents of any such employees for providing medical or hospital care, pensions on retirement or death of employees, or for any other purpose permitted under Section 302(c) (5) of the Labor-Management Relations Act as amended in 1959.

2. That during the period of their existence, the three trusts hereinabove described and Southern California Plastering Institute, Inc. have been representatives of employees of employers who are parties to the collective bargaining agreements entered into with the defendant unions. That one-half of the trustees of each of such three trusts have at all times been named and designated as such trustees by employees within the meaning of the said Section 302(c) (5), and are, therefore, representatives of employees within the meaning of such statute. That the said three trusts are, therefore, likewise representatives of employees within the meaning of the above-mentioned statute.

3. That one-half of the Directors of Southern California Plastering Institute, Inc. are now and have been at all times herein mentioned representatives of employees within the meaning of said Section 302(c) (5), and the Articles of Incorporation and the By-Laws of Southern California Plastering Institute, Inc. have been so drawn as to assure equal control of the management and affairs of such corporation by representatives of employees and representatives of employers who are parties to collective bargaining agreements with the defendant unions herein. That the said corporation has been formed and created by the defendants herein for the purpose of taking over and carrying out the functions heretofore carried out by the three trusts hereinabove mentioned, including the function of collecting and receiving contributions from the employers pursuant to the provisions of the said collective bargaining agreements, and also, the disbursement of such contributions for purposes which are not authorized or permitted with respect to trusts under said Section 302(c) (5). That by reason of the control of the management and affairs of such corporation through the Articles of Incorporation and By-Laws as hereinabove described in the Findings of Fact, and by reason of the fact that one-half of the Directors of such corporation are required to be representatives of employees within the definition of the above-mentioned statute, said Southern California Plastering Institute, Inc. is likewise a representative of employees within the meaning and prohibition of the above-mentioned statute.

4. That none of the three trusts hereinabove described nor Southern California Plastering Institute, Inc. now have any right to collect or receive monies or contributions from plaintiffs or from any other employers who are parties to any collective bargaining agreements with any of the defendant unions. That any and all provisions contained in any of the collective bargaining agreements described in the Findings of Fact, including any amendments to any such collective bargaining agreements, and any and all provisions of the three trusts hereinabove described which contemplate, provide for or require the payment of monies to any of such trusts or corporation, or to any representatives of any such trusts or corporation, are null, void, and of no force and effect whatsoever, in that they are in violation of the prohibitions and

provisions contained in Section 302 of the Labor-Management Relations Act as amended in 1959.

5. That plaintiffs are entitled to an injunction under and pursuant to the provisions of Section 302(c) of the Labor-Management Relations Act as amended in 1959, enjoining and restraining the defendants and each of them from demanding, collecting, receiving or from attempting to collect or receive, any monies or contributions from plaintiffs or any of them.

## Judgment and Decree

Now, therefore, it is hereby ordered, adjudged and decreed:

1. That none of the purposes for which the three trusts hereinabove described or Southern California Plastering Institute, Inc. have been maintained and created come within the exceptions which are specified under Section 302(c) (5) of the Labor-Management Relations Act as amended in 1959. That none of such trusts nor such corporation are now or have been operating any trust fund established for the sole and exclusive benefit of employees of any employer, or the families or dependents of any such employees for providing medical or hospital care, pensions on retirement or death of employees, or for any other purpose permitted under Section 302(c) (5) of the Labor-Management Relations Act as amended in 1959.

2. That during the period of their existence, the three trusts hereinabove described and Southern California Plastering Institute, Inc. have been representatives of employees of employers who are parties to the collective bargaining agreements entered into with the defendant unions. That one-half of the trustees of each of such three trusts have at all times been named and designated as such trustees by employees within the meaning of the said Section 302(c) (5), and are, therefore, representatives of employees within the meaning of such statute. That the said three trusts are, therefore, likewise representatives of employees

within the meaning of the above-mentioned statute.

3. That one-half of the Directors of Southern California Plastering Institute, Inc. are now and have been at all times herein mentioned representatives of employees within the meaning of said Section 302(c) (5), and the Articles of Incorporation and the By-Laws of Southern California Plastering Institute, Inc. have been so drawn as to assure equal control of the management and affairs of such corporation by representatives of employees and representatives of employers who are parties to collective bargaining agreements with the defendant unions herein. That the said corporation has been formed and created by the defendants herein for the purpose of taking over and carrying out the functions heretofore carried out by the three trusts hereinabove mentioned, including the function of collecting and receiving contributions from the employers pursuant to the provisions of the said collective bargaining agreements, and also, the disbursement of such contributions for purposes which are not authorized or permitted with respect to trusts under said Section 302(c) (5). That by reason of the control of the management and affairs of such corporation through the Articles of Incorporation and By-Laws as hereinabove described in the Findings of Fact, and by reason of the fact that one-half of the Directors of such corporation are required to be representatives of employees within the definition of the above-mentioned statute, said Southern California Plastering Institute, Inc. is likewise a representative of employees within the meaning of prohibition of the above-mentioned statute.

4. That none of the three trusts hereinabove described nor Southern California Plastering Institute, Inc. now have any right to collect or receive monies or contributions from plaintiffs or from any other employers who are parties to any collective bargaining agreements with any of the defendant unions. That any and all provisions contained in any of the collective bargaining agreements de-

scribed in the Findings of Fact, including any amendments to any such collective bargaining agreements, and any and all provisions of the three trusts hereinabove described which contemplate, provide for or require the payment by employers of monies to any of such trusts or corporation, or to any representatives of any such trusts or corporation, are null, void, and of no force and effect whatsoever, in that they are in violation of the prohibitions and provisions contained in Section 302 of the Labor-Management Relations Act as amended in 1959.

5. That the defendants, the Unions, Ray Carter, Reuben R. Partin, A. H. Gallardo, Al Lethbridge, Ray Baker, George Cole, Elmer Croshaw, Al Seay, Eugene D. Ferguson, Hugh L. Sosbee, and each of them, be and they hereby are, permanently enjoined and restrained from demanding, collecting, receiving or from attempting to collect or receive any monies or contributions for any fund under their management or control from plaintiffs, or any of them, for purposes other than those set forth in § 302(c) (5) of the Labor-Management Relations Act as amended in 1959. The defendants, George M. Raymond, C. A. Reischel, James C. Peacock and Paul Calcaterra, and each of them is and they hereby are permanently enjoined and restrained so long as they are acting as trustees or as directors or members of an organization con-jointly with any persons selected or appointed by the defendant unions or the members of such unions, from demanding, collecting, receiving or from attempting to collect or receive any monies or contributions from plaintiffs, or any of them, for purposes other than those purposes which are expressly exempted from § 302(c) (5) of the Labor-Management Relations Act as amended in 1959. The defendant Southern California Plastering Institute, Inc., its directors, agents and employees, so long as any of the members of said corporation or its Board of Directors are the defendant unions or persons selected or appointed by the defendant unions, permanently enjoined and restrained from de-

manding, collecting, receiving or from attempting to collect or receive any monies or contributions from plaintiffs or any of them for any purposes other than those which are expressly exempted by § 302(c) (5) of the Labor-Management Relations Act as amended in 1959.

6. That pending the expiration of the time in which defendants have to appeal from this judgment and decree, and pending the final determination or disposition of any such appeal in the event any such appeal is taken and perfected, the injunction provisions hereinabove set forth be, and they hereby are, stayed.

7. That plaintiffs are entitled to their costs herein in the sum of $————.